SAMUEL W. WINKLE et ux., Respondents, v. GEORGE B. PECK DRY GOODS COMPANY, Appellant.

Kansas City Court of Appeals, October 5, 1908.

1. MASTER AND SERVANT: Evidence: Elevator Weight: Physical Facts. *Held*, that under the circumstances the evidence of an elevator operator that a weight fell down the main shaft was supported and not contradicted by the physical facts. *Held*, further, that the theory that such weight in descending struck a servant looking into the shaft is likewise supported and not contradicted by the physical facts.

2. ——: ——: ——: Defective Brake. *Held*, the trial court properly refused to treat as an issue to go to the jury the question whether an elevator brake was in proper repair or not.

3. ——: ——: Prior Fall of Elevator. *Held*, evidence relating to the prior fall of the elevator and its weight, was substantial testimony and consistent with the physical facts.

4. ——: ——: ——: Rule: Scienter. Evidence of other important and disconnected acts of negligence are not admissible to show negligence in the particular case; but this rule has no application to master and servant cases where the prior occurrences appear to have a direct bearing on the instrumentality from which the servant received his injury and the master's knowledge thereof.

5. ——: Elevator Shaft: Infant Employees: Negligence. The owner of an elevator operated in a large department store where juvenile employees come in contact with the elevator shaft owes them the duty to keep such elevator in reasonably safe repair so that dangerous things may not be thrown down the shaft, notwithstanding it keeps posted over every opening in such shaft "keep heads out;" and whether the failure so to do is negligence, is a question for the jury.

6. ——: ——: ——: ——: Contributory Negligence. Whether the conduct of a cash-girl thirteen years of age in loading an elevator and then in poking, in the face of warning, her head into the shaft, constituted contributory negligence, is a question of fact for the jury and not of law for the court.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

AFFIRMED.

*Grant I. Rosenzweig* for appellant.

(1) Fellow-servants. Moore v. Wabash, 85 Mo. 588; Foster v. Mo., 115 Mo. 165. (2) Negligence of minors in law. Mason v. Railroad, 123 Mo. App. 486; Payne v. Railroad, 136 Mo. 562. (3) Accidents not reasonably anticipated. American v. Talbot, 141 Mo. 674. (4) Choice of two ways. Hurst v. K. C. P., 163 Mo. 322; Montgomery v. Chicago, 109 Mo. App. 88. (5) Previous accidents. Calcaterra v. Iovaldi, 123 Mo. App. 347; Atchison v. Townsend, 39 Kan. 115; Smart v. Kansas City, 91 Mo. App. 594. (6) Presumption of duty done. 95 Mo. App. 120; 120 Mo. 169; 88 Mo. 496. (7) Presumptions. Several possible aspects—conjecture—proximate cause. Moore v. Lindell, 176 Mo. 528; Hamilton v. Railroad, 123 Mo. App. 619; Klebe v. Parker, 105 S. W. 1061; Trigg v. Ozark, 187 Mo. 227; Goransson v. Ritter, 186 Mo. 300; Caudle v. Kirkbridge, 117 Mo. App. 412; Hayne v. Hammond, 103 S. W. 581; Beebe v. St. Louis, 103 S. W. 1019; Leffler v. Anheuser, 106 S. W. 107; Doerr v. St. Louis, 176 Mo. 547; Richardson v. Mesker, 171 Mo. 666; Purcell v. Tennent, 187 Mo. 276; Fore v. Railroad, 114 Mo. App. 551; Stanley v. Union, 114 Mo. 624; Reno v. St. Louis, 180 Mo. 483; Smart v. Kansas City, 91 Mo. App. 586; DeMeat v. Storage, 121 Mo. App. 92; Breen v. St. Louis, 50 Mo. App. 202; Warner v. St. Louis, 178 Mo. 125.

*A. S. Lyman* and *Walsh & Morrison* for respondent.

(1) The demurrer to the evidence was properly overruled. Rogers v. Printing Co., 103 Mo. App. 683; Cole v. Transit Co., 183 Mo. 94, and cases cited; Curtis v. McNair, 173 Mo. 282; Bowen v. Railroad, 95 Mo. 274; Hamilton v. Mining Co., 108 Mo. 373; Jones v. Railroad, 178 Mo. 549; Doyle v. Trust Co., 140 Mo. 1; Scott v. Springfield, 81 Mo. App. 312; Huth v. Dohle, 76 Mo.

App. 671. (2) Negligence as shown by evidence of former falling of weights and elevator. Labatt on Master and Servant, sec. 137; Blanton v. Dold, 109 Mo. 72; McGinnis v. Printing Co., 122 Mo. App. 238; Rogers v. Printing Co., 103 Mo. App. 683; Langer v. Mfg. Co., 120 Mo. App. 494; Shore v. Bridge Co., 111 Mo. App. 288. (3) Even if evidence was improperly admitted it is entitled to consideration here. 17 Cyc., 800, and cases cited. (4) Negligence of minors in law. Rogers v. Printing Co., 103 Mo. App. 683; Obermeyer v. Mfg. Co., 120 Mo. App. 70; Campbell v. Railroad, 175 Mo. 161; Henderson v. Kansas City, 177 Mo. 477. (5) The choice of two ways of work is settled by verdict of the jury. Edington v. Railroad, 204 Mo. 61. (6) The verdict of the jury is not excessive. Francke v. St. Louis, 110 Mo. 5-16.

JOHNSON J. Plaintiffs, who were the parents of Irene Winkle, deceased, a minor, bought a statutory action for damages on the ground that the death of their daughter was caused by the negligence of defendant. The trial to a jury resulted in a verdict and judgment in their favor in the sum of $1500, and the cause is here on the appeal of defendant. At the time of her death which occurred on the 10th day of September, 1904, Irene was thirteen years old and was employed as a cash girl by defendant, the proprietor of a large department store in Kansas City. She and two other cash girls of about the same age, Katie Epp and Olivia Hummes, were working on the second floor and had been directed to carry some bolts of sheeting to a dummy elevator and to send them thereon to a lower floor. The girls carried the bolts to the elevator door, called down to the operator who was stationed at the foot of the shaft to send up the car and when it arrived, put on the entire load which weighed about eighty pounds—a weight greatly in excess of that which the elevator was de-

signed to carry. The loaded car fell to the bottom of the shaft. The girls, at the time, were at the door looking into the shaft and in an instant after the car fell, Katie and Irene fell to the floor unconscious. It was found that Katie had received a wound on the forehead, consisting of a bruise and a slight abrasion of the skin. Irene's skull was fractured and she died in a few hours.

It is alleged in the petition that "said Irene Winkle was directed by the servants and employees of defendant in charge of said second floor of defendant's said store building, to assist in loading into said elevator or hoist a quantity of sheeting to be sent down to the said "delivery" or "send" office; and that when eighty pounds weight of said sheeting had been so placed on said elevator, and while said Irene Winkle was then and there standing close to said elevator in the act of arranging said goods therein, the said elevator by reason of being overloaded with said eighty pounds of goods, suddenly fell to the bottom of the shaft and in consequence of the sudden fall of said hoist or elevator to the bottom of said shaft, it rebounded and the balance weights at the other end of the rope holding said hoist or elevator being then at the top of the top or sixth floor, also rebounded and such rebound caused one of said weights, weighing about twenty-five pounds and made of cast-iron, to break off from said rope and to fall into and down through the shaft of said hoist or elevator striking the said Irene Winkle upon the head directly over her forehead, fracturing her skull and so injuring her that she died a few hours thereafter as the result of said injury. That said death of the said Irene Winkle was caused by the negligence and carelessness of the defendant, its agents and servants in permitting the use and operation of said hoist or elevator while the same was in the unsafe and dangerous condition owing to its method of construction as aforesaid; also in negligently permitting the said hoist or elevator to be overloaded so that it

suddenly fell as aforesaid; also in permitting said hoist or elevator to be used and operated without having provided safety checks or appliances therefor to prevent the sudden fall thereof; also in permitting said elevator or hoist to be used and operated with the insufficient check upon the rope holding up said elevator, when said defendant, its agents, servants and employees well knew of the insufficiency thereof, or when they by the exercise of ordinary care and caution might have known of the insufficiency thereof in time to have avoided the accident and injury to plaintiff; and also in failing and neglecting to provide proper and secure fastenings by which to fasten the balance weights aforesaid to the rope which held up the said hoist or elevator."

The answer was a general denial. Defendant contends that the court erred in refusing its request for an instruction peremptorily directing a verdict in its favor and argues that the evidence, even in the light most favorable to plaintiffs does not accuse defendant of negligence either in the construction and maintenance of the elevator or in its operation, but does show that the death of the child was the direct result of her own negligence and of the negligence of her two companions—her fellow-servants. No one saw what caused Katie and Irene to fall. The door of the elevator shaft in front of which the girls were standing was two feet square and its base was about two and one-half feet above the floor. Olivia testified that immediately after the car or box started to fall, her companions put their heads into the opening and looked downward into the shaft. Instantly they fell backward and the head of Irene struck the floor violently. One witness standing a few feet away saw the girls fall but did not see the cause. It is certain that Irene received a violent blow on the head. The skin was not broken, but the right eye and the forehead over it were badly swollen. The physician who first examined her testified: "The right eye was puffed and

swollen . . . It was bulged quite considerably so that it seemed even to protrude from its socket—both the ball and the lid." After making an incision and laying back the scalp, he found a fracture of the skull extending over the right eye diagonally backward to the base of the skull and another fracture across the forehead. Fragments of bone were found along the lines of these fractures. The dummy shaft extended from the basement of the building to the sixth floor and was entirely enclosed. It contained two compartments, one for the box and the other for the counter-balancing weights. They were separated by a board partition which extended from a point about five feet above the basement floor to the top of the shaft which was midway between the sixth floor and the ceiling. The box was suspended by a small wire cable which ran over two pulleys placed near the ceiling and down into the other compartment where it held the weights suspended. The weight attached to the cable was an iron block provided at the bottom with a hook. Below was another weight, an iron sash weight, which weighed about twenty pounds and at each end was provided with an eye. This lower weight was hooked on to the other or was fastened with a piece of wire. Witnesses differ about this. A small cotton rope attached to the bottom end of the sash weight was looped under the lower end of the partition into the other compartment where it was fastened to the bottom of the box. A boy stationed in the basement at the bottom of the shaft operated the dummy. On receiving a signal that the box was wanted at a particular floor, he elevated it to the required position by pulling on the rope; this pulled down the weights and, of course, raised the box. When he stopped pulling, the box stopped because the box and the counter-balancing weights were of equal weight. Twenty-five pounds was the maximum load the dummy was intended to carry. The descent of the box could be controlled by a brake which the oper-

ator worked by means of a treadle and which consisted
of an arm hinged to the building immediately over the
pulleys and a wooden shoe affixed to the under side of
the arm. A cord connected the outward end of this arm
with the treadle and when the operator pressed on the
treadle with his foot, it pulled down the end of the arm
in a manner to cause the shoe to bear tightly against
the top of the pulleys.

There is no evidence that the brake was out of order.
It was not set nor was the operator signalled to lower
the box. The first warning he had was when the box
came crashing down the shaft and fell to the floor in
front of where he stood. He testified that its fall was
followed by that of the sash weight which also came
down the main shaft and struck the floor in front of
where the box was lying. This statement is stoutly de-
nied by defendant's witnesses who say that the weight
did not fall. Other witnesses (some of whom were intro-
duced by defendant) stated that after the accident a
sash weight was found on the floor at or near the bottom
of the shaft. The evidence introduced by defendant
tends to show that the sash weight in use remained in its
place and did not fall, but we find the evidence of plain-
tiffs to the effect that it became detached from both the
fastenings and fell to be substantial, and in considering
the demurrer to the evidence, must accept it as true, un-
less we should agree with defendant that the statement
of the operator that the weight fell down the main shaft
is so at variance with the conceded physical facts of the
situation that its acceptance would overtax credulity.

The conclusion drawn by counsel for plaintiffs is
that when the rapid descent of the overloaded box was
suddenly arrested by striking the basement floor, the
sash weight which had been ascending to the top of the
shaft with equal rapidity and had reached a point above
the top of the partition, was whipped over the partition
by the force of inertia, became unhooked from the upper

weight, tore loose from the small rope when it reached the end of the slack therein and fell down the main compartment turning over in its descent and rebounding between the walls of the shaft and, in passing the opening into which the girls were looking, struck Irene on the forehead and grazed the forehead of Katie.

We do not agree with counsel for defendant that the testimony of the operator should be disbelieved and accorded no probative value. It was not physically impossible for the sash weight to be detached and projected over into the main compartment. Considering the facts that it was heavy and comparatively small, was moving upward with great speed and was loosely hooked to its support, it seems very reasonable that it should become unhooked and continue in its flight which necessarily would incline it towards the top of the main compartment and when it reached the end of its tether, we think it would have been surprising if the force of a projectile of such character had not proved sufficient to sever its attachment to the small rope. The statement of the operator that the weight fell down the main shaft appears to be strongly supported by the physical facts and circumstances rather than to be opposed by them and we regard it as possessing evidentiary value.

Nor do we perceive any reason for saying as a matter of law that Irene could not have been struck by the falling weight. It is the theory of defendant that the girls, crowded in front of the opening, accidentally tripped or collided with each other causing two of them to fall, and that Irene's skull was fractured by the blow she received when the back of her head struck the hard floor. That theory is most improbable and speculative. In the first place, had anything of the kind occurred, the eye-witnesses, Olivia in particular, would have known of it. There was no indication of any struggle or even movement preliminary to the fall, but the unfortunate girls dropped before the eyes of the witnesses

as though stricken by lightning. Both fell backward and both were wounded in the forehead. These circumstances seem inconsistent with the supposition that a collision or similar mishap was the cause of the fall. Equally inconsistent with this theory is the nature of the injury to Irene. The physician to whom we have referred testified that her skull was extraordinarily thin and weak, and point is made that the hard fall to the floor could have fractured it. The fractures themselves afford the strongest kind of evidence of the nature of the blow received. Can it be doubted by any reasonable mind that the radial point on the forehead where the fractures intersected was a traumatic center—the place where a violent blow was received? How could a blow on the back of the head not violent enough to cause more than a single fracture at that place result in the production on the forehead of a center such as that described, and in the splintering of the bone along the radiating lines? We no more would be justified in indulging in speculation to aid the defense than to aid the cause asserted by plaintiffs, and we must reject this theory of defendant as being wholly improbable and at war with the plain physical facts and circumstances before us. We are not overlooking the rule that the burden is on plaintiffs, not the defendant, to show by evidence the producing cause of the injury, and we turn now to the question of whether the hypothesis of plaintiffs that the injury was the result of a blow on the head received from the falling weight should be regarded as speculative or as a reasonable inference to be drawn from the facts and circumstances in proof.

Having before us indubitable evidence that the child was struck on the forehead while her head was in range of the falling weight, we could not pronounce the hypothesis of plaintiffs to be conjectural without saying, in effect, that they were bound to prove their cause by direct evidence and would not be heard to rely on facts

and circumstances, however strong. We give full sanction to the rule so often followed by the courts in this State that "where injury may be the result of one of several causes, for only one of which the master is liable, the servant must show, with reasonable certainty that that cause produced the injury, and where the evidence leaves the cause in doubt and uncertainty, there is no case for the jury." [Caudle v. Kirkbride, 117 Mo. App. 412; Trigg v. Ozark, 187 Mo. 227; Goransson v. Riter-Conley Mfg. Co., 186 Mo. 307.] But plaintiffs have satisfied that rule by producing evidence from which the conclusion not only is reasonable but is irresistible that the injury was caused by the falling weight. But one cause of injury is shown by that evidence. The jury were not required to choose between two or more probable causes but in accepting as true the evidence adduced by plaintiffs, were confronted by a single forced conclusion. It is hardly necessary to state that the existence of an ultimate fact need not be shown by direct evidence, but may be proved by circumstantial evidence. The inferred fact under consideration is not left by the evidence in the realm of uncertainty.

The next subject to engage our attention is whether or not the evidence discloses that the fall of the weight was due to one or more of the negligent acts of defendant pleaded in the petition. The boy who operated the dummy testified that the box had fallen repeatedly and that the brake was defective and would not control the descent of the box when it carried a heavy load. But since it appears that no effort was made to set the brake, because of the fact that the operator was not signalled that a load was ready to descend, and the box fell without warning, the condition of the brake had nothing to do with the accident, and the trial court properly refused to treat it as an issue to go to the jury.

Further, the operator testified that on three or four occasions when the box fell under heavy loads, the sash

weight fell as it did in the present instance and that each time he reported the occurrence to the superintendent who told him to get the carpenter to fix it or to fix it himself. Counsel for defendant argue that this testimony should be ignored, first, because it is overwhelmed by the weight of contradictory evidence and, second, because it is incompetent, being addressed entirely to collateral and irrelevant issues.

In answer to the first proposition, it is enough to say that the evidence of the falling of the box and weight on prior occasions is substantial. To say the least, it is consistent with the physical facts disclosed, and this being true, the fact that it is contradicted by a number of witnesses introduced by defendant does not rob it of probative strength. [Pickens v. Railway, 125 Mo. App. 669.]

The second point also must be ruled against the contention of defendant. The rule is followed in this State that in negligence cases evidence of other independent and disconnected acts of negligence is not admissible to show negligence in the particular case. [Franklin v. Railway, 97 Mo. App. 473.] The rule is founded on the idea that as such acts have no direct bearing on the issue of negligence in a given case, they are collateral and irrelevant, but it has no application to master and servant cases where prior occurrences sought to be shown appear to have a direct bearing on the questions of whether the instrumentality from which the servant received his injury was in a defective condition and of the master's knowledge, either actual or constructive of the existence of such condition. We quote with approval from Labatt on Master and Servant, section 137: "A jury, therefore, is always warranted in inferring from the evidence of the previous defective operation of an instrumentality that the master was negligent in not seeing that the instrumentality was properly constructed and adjusted so as to be safe when

it was originally put in use or in not discovering its dangerous condition and making it safe before the accident." On the same subject we said in McGinnis v. Printing Co., 122 Mo. App. 227: "The rule established by the authorities cited is that although isolated instances of negligence are not competent proof, yet where such instances go to show the existence of a condition, they are competent." In such cases they are not collateral but are germane to the issue. The evidence under consideration was admissible and it tends to establish the existence of two facts: First, that the dummy was in a defective condition, both in the means provided for controlling the movement of the box while heavily loaded and in the manner of attaching the sash weight which permitted it to become detached readily and to fall through the shaft and, second, that defendant had actual or constructive knowledge of the existence of these defects in time to have corrected them had reasonable diligence and care been observed.

But in these omissions, was defendant guilty of any breach of duty to Irene, its servant? Was it bound to anticipate that she might place herself in a position where her head would be within the range of the weight when it fell down the enclosed shaft? Over each opening of the shaft defendant had posted a notice reading, "Keep heads out." Evidently, the posting of this notice was prompted by the belief that without it, children employed in the establishment—of whom there were many—might do the thing the notice warned them not to do and thereby place themselves in danger of being struck by any object that might pass up or down the shaft. Considering the proneness of children recklessly to defy the master's orders when his back is turned or, when innocent of intentional wrong-doing, to act thoughtlessly and impulsively in opposition to adult admonition, defendant should have known that it was highly dangerous to the safety of its youthful servants

to maintain the dummy in the condition described in plaintiff's evidence, and its failure to rectify that condition can be regarded in no other light than as a negligent breach of duty it owed its servants, including the unfortunate Irene. The question of defendant's negligence was an issue of fact to be solved by the jury.

We do not give our approval to the argument of defendant that we should pronounce the child guilty of contributory negligence as a matter of law. She participated with her companions in the overloading of the box, but the jury were entitled to infer that in doing this she and her companions acted after the manner of children of their age. Likely enough they thought it would be fine sport to make the box fall, but they did not know nor had they any reason to believe that a twenty pound iron weight would be hurled down the shaft to their great peril. What they did might have been culpable in a person of mature years, but in a child of thirteen years, we think the characterization of such conduct falls clearly within the province of the jury. What we said in Mann v. Railway, 123 Mo. App. 486, is pertinent: "The conduct of a boy twelve years old should not be measured by the standard of care applied to an adult because the immaturity of youth ordinarily embraces not only an imperfect knowledge of natural facts and laws and of the proper relation between cause and effect, but when possessed of these elements necessary to the exercise of reasonable care it still lacks the discretion, thoughtfulness and judgment presumed to be an attribute of the ordinarily prudent adult and which may be said to come only with experience. Thoughtlessness, impulsiveness and indifference to all but patent and imminent dangers are natural traits of childhood and must be taken into account when we come to classify the conduct of a child." In that case, we pronounced the boy negligent in law on the ground that he must have known that to go to sleep where he did would place

him in great danger from a passing train. In the present case, we have no reason to say that the child should have anticipated that her act in overloading the box and in looking into the shaft to see the box fall would place her in the path of a falling weight. She would not have been in peril had defendant properly secured the weight in its position. The learned trial judge committed no error in overruling the demurrer to the evidence and as the cause was submitted to the jury in conformity to the views expressed, we have no occasion to interfere with the judgment.

Point is made that the verdict is excessive, but a careful consideration of the evidence bearing on the subject convinces us that the damages awarded are within proper bounds.

The judgment is affirmed. All concur.