## RUMBAUGH v. RUMBAUGH.

No. 2767. Opinion Filed October 14, 1913.

(135 Pac. 937.)

1. **DEEDS—Fraud—Cancellation.** In an action to cancel a deed for duress and fraud, if the fraud of itself be sufficient to induce, and did induce, the making of the deed, it is sufficient, when discovered, to warrant its cancellation.

2. **SAME.** Where, out of his deep regard for and implicit confidence in his wife, and upon her representations and the advice of the doctor who had been treating her that, owing to her critical condition of health, she could not cohabit with any one, and that it was absolutely necessary that they live separate and apart, a husband is induced to convey land to his wife in order to protect her health, and to enable her to live a respectable life, and he afterwards discovers that such representations and advice were wholly false, and that it had been made with a fraudulent intent on the part of his wife and the said doctor to obtain said land in order that they might continue their illicit relations, such facts, being the sole consideration in the deed, are sufficient to warrant its cancellation for fraud.

3. **APPEAL AND ERROR**—Trial—Verdict—Evidence—Instructions. A judgment rendered upon a verdict based upon conflicting testimony will not be reversed where it is reasonably supported by the evidence, nor will a judgment be reversed for refusal to give instructions offered by counsel, although such instructions may correctly state the law, if the law applicable to the facts in the case is fairly and fully covered by the court's charge.

(Syllabus by Harrison, C.)

*Error from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Action by J. C. Rumbaugh against Annie M. Rumbaugh. Judgment for plaintiff, and defendant brings error. Affirmed.

*B. M. Parmenter* and *J. A. Lenartz,* for plaintiff in error.

*H. C. Stubblefield* and *H. N. Whalin,* for defendant in error.

Opinion by HARRISON, C. This action was begun in the district court of Comanche county November, 1907, by J. C. Rumbaugh against his wife, Annie Rumbaugh, for the cancellation of a deed to a certain 80-acre tract of land in Comanche county; the same being one-half of a 160-acre tract patented to plaintiff under the homestead laws of the United States. The deed in question was executed and delivered in Stiles, Reagan county, Tex., and is alleged to have been procured by duress, fraud, menace, and undue influence, in that it was given in consideration of the fact that the said Annie Rumbaugh, who, it is alleged, had previously been living with, and leading an adulterous life with, one Dr. A. H. Young, when he believed her to be in a hospital under treatment for her health, and who, it is alleged, had confessed her wrongdoing, and promised to reform, and quit the said Dr. Young, and lead a better life; that, in consideration of the promise that she would do so, and in consideration of the fact that she was without means of support, and in further consideration of the fact that she had insisted that, unless he gave her a deed to this property, she would be compelled to resort to a house of ill fame, and in further consideration of his love and affection for her and confidence in her statements and promises, believing them to be true, he executed the deed in question, but that, instead of keeping her

promise with him,. she continued to live in adultery with the said Dr. Young, and in truth and in fact had never intended to quit him, but that the representations and promises given to him by her were a fraud and conspiracy framed up between her and the said Dr. Young for the purpose of fraudulently obtaining the said deed to. said tract.

The defendant answered, denying the allegations generally, and filed a cross-petition for the rents and profits which had been derived from such land from the execution and delivery of the deed to the filing of the suit, and also asked judgment on a note for the sum of $400, which plaintiff had given her at the time he delivered the deed for the purpose of affording her a present means to live upon.

The cause was tried in December, 1910, resulting in a judgment and verdict in favor of plaintiff for the cancellation of the deed and note in question. From such judgment and order overruling motion for a new trial, defendant, Annie M. Rumbaugh, appealed upon 28 assignments of error, all of which will be considered under two general propositions: First, Did the petition state a cause of action? Second, Was the evidence sufficient to support the verdict?

The pleadings show in substance: That in May, 1907, the defendant complaining of ill health, plaintiff summoned Dr. A. H. Young, a physician, to treat the defendant. That after making a few visits to see defendant the doctor advised plaintiff that defendant was in need· of close and careful attention, and that it was necessary that she should be taken to his, the doctor's home, where he could give her more constant attention. That, relying upon the doctor, and having all confidence in him, ·he agreed that his wife, the defendant, should be taken to the doctor's house for treatment, and pursuant thereto she went to the doctor's, and remained there with him up. to the time she departed with him for Texas. That the doctor had a married sister living in the same house, with several children, and plaintiff never suspected anything wrong either of his wife or of the doctor, but had been doing work for the doctor while his wife was there under treatment, such work as plowing, breaking land,

building houses, and doing other work. That within a short time, some month or so, after she had been at the doctor's house, she and the doctor represented to plaintiff that her health was in such condition that it would be impossible for her ever to live with him as his wife again, but that it was absolutely necessary for her to separate from him, and live away from him, if she lived at all. That the doctor had advised such course, and advised her that it was necessary, and that, if they should separate in that way, she would be without means of support, being penniless and not able to work, and that, such being the case, she insisted that he enter into a contract of separation and division of property. That Dr. Young also talked with him, and advised the same thing. That, relying upon the honor and knowledge of such doctor, and upon the virtue and truthfulness of defendant, being convinced from the statements made by the doctor and defendant that her condition of health was such that separation was necessary in order to prolong her life, plaintiff consented to enter into such contract, and did in August sign such contract, dividing certain personal property, promising to pay her the sum of $1,700, if he should be able to sell their home by a certain time, and, in the event he should be unable to sell the home, that he should then deed her the west half of the 160 acres. The contract contained the further provision that she should be allowed to live separate and apart from him, but that, in the event she should bring an action for divorce, he should not appear against her. That within a few days after making such contract, upon the advice of the doctor and the insistence of defendant, plaintiff allowed her to be taken away for treatment in a sanitarium. That within a short time after their departure plaintiff learned that, instead of going to a sanitarium, where she could be treated for her alleged critical health, she and the doctor had gone to Stiles, Tex., a distance of about 600 miles, making the trip in a covered wagon, traveling and living together as man and wife. That upon receiving such information he went to Stiles, Tex., and there found them living in adultery. That he made complaint, and had them arrested. That, when they were arrested, defendant acknowledged to plain-

tiff in a written statement that she had been living with Dr. Young, but that such fact had been due to a great influence, an irresistible influence, which the doctor had over her, and from which she was desirous of freeing herself, and that, if plaintiff would make her a deed to the west half of the 160 acres of their home, she would quit the doctor, and not live with him any longer, or have anything more to do with him, but that she still claimed that her health was so bad that she could not go back to him and live with him as his wife, although she insisted that, being penniless as she was, unless he gave her the deed in question and some additional means of support, she would be compelled to go to a house of ill fame. That, acting upon such representations, believing them to be true, and being actuated by his love and affection for her, and still believing in her virtue, and that she had been unduly influenced by the doctor, he executed the deed in question and a note for $400, in order that she might be able to free herself from the influence of the doctor, and have something of her own to live upon, and still lead a virtuous and respectable life. That within a short time thereafter he learned that she was still living with the doctor as his wife, and had in fact been so living all the time. The question, then, is whether such facts, if true, were sufficient to warrant a court of equity in ordering the deed cancelled for menace, fraud, duress, and undue influence.

We think they are sufficient. The allegations show very clearly what consideration moved him to execute the deed. They clearly show that he was moved to make the deed; that his mind was influenced to execute it solely by the representations of his wife that she had been unwillingly lead into her wrongdoing by an evil yet overpowering influence of the doctor; that she was desirous of freeing herself from such influence, and, if given an opportunity, she would do so, but that, owing to her ill health and penniless condition, she would be compelled to resort to worse shame, unless he deeded her the property. These representations and his confidence in the truth of same, together with his deep regard for her and her good name as well as his own, influenced him to make the deed, and, such representations

being wholly false, it seems to us that the very fact of their falsity answers the question whether there was sufficient fraud to warrant the cancellation of the deed. If the fraud was sufficient to move him to execute the deed, it would certainly follow that such fraud when discovered was sufficient to warrant its cancellation. A fraud which of itself is sufficient to induce the execution of an instrument is sufficient to warrant its cancellation.

In *Douthitt v. Applegate,* 33 Kan. 395, 6 Pac. 575, 52 Am. Rep. 533, in an action to cancel a deed procured through fraudulent promise of marriage, Mr. Justice Valentine, in sustaining a judgment of cancellation of the deed, quotes from Story on Equity Jurisprudence and from Perry on Trusts as follows:

"Story says: 'Where the party intentionally or by design misrepresents a material fact or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case there is a positive fraud in the truest sense of the terms. There is an evil act with an evil intent;*"dolum malum ad circumveniendum."* And the misrepresentation may be as well by deeds or acts as by words; by artifices to mislead, as well as by positive assertions.' 1 Story's Eq. Jur. 192. Mr. Perry says: 'Whenever by misrepresentation, combination, conspiracy, oppression, intimidation, surprise, or any other practice at variance with honest, fair dealing, one is deceived, entrapped, or surprised into a conveyance of the legal title to his property, courts of equity will not allow the fraudulent grantee to avail himself of the transaction to enjoy the beneficial interest, but will construe him to be a trustee, and will order him to account upon equitable principles, and to make a reconveyance of the property.' Perry on Trusts, 171."

The following authorities also throw light upon the question: *Tapley v. Tapley,* 10 Minn. 448 (Gil. 360), 88 Am. Dec. 76; *Kocourek v. Marak,* 54 Tex. 201, 38 Am. Rep. 623, and notes.

Hence it is clear that a cause of action was stated in the petition, and that the judgment, if supported by sufficient evidence, was not contrary to law, and, from an examination of the record, we think the verdict and judgment was amply supported. There was, it is true, some conflict in the testimony; but the jury

heard the testimony, heard and saw the witnesses, and after weighing their testimony rendered a verdict in favor of plaintiff. We do not feel authorized to disturb the verdict, nor do we feel disposed to criticise it. We have also examined the various assignments of error pertaining to the admission and rejection of testimony, and find no material error.

As to the instructions of the court and the rejection of those offered by defendant, we believe the law applicable to the facts in the case was fairly and fully covered by the court's charge, and we find no material error in this regard. It is our opinion that upon the whole record substantial justice under both the law and the evidence was done to the parties.

The judgment is affirmed.

By the Court: It is so ordered.