## ABBOTT *et al.* v. DINGUS.

No. 3940. Opinion Filed November 17, 1914.

Rehearing Denied January 9, 1915.

(145 Pac. 365.)

1.  **PLEADING—Petition—Objection.** Where the sufficiency of a petition is challenged solely by an objection to the introduction of evidence thereunder, such objection, not being favored by the courts, should generally be overruled, unless there is a total failure to allege some matter essential to the relief sought, and should seldom, if ever, be sustained when the

allegations are simply incomplete, indefinite, or conclusions of law.

2.     MUNICIPAL CORPORATIONS — Streets — Damages — Petition—Sufficiency. The petition in this case, measured by the above rule, is sufficient.

3.     SAME—Care Required. The obligation which the law imposes upon a driver of a horse-drawn vehicle is to exericse reasonable care, to the end of keeping his horses and vehicle under such control as to be able to prevent a collision with other vehicles or pedestrians on the highway.

4.     SAME—While the law does not make a driver upon a public street or highway an insurer against accidents which may happen because of his being there, yet it demands of him the exercise of reasonable or ordinary care; and, as in every other situation, this degree of care is one commensurate with the danger to others which attends the particular situation.

5.     TRIAL — Direction of Verdict — Evidence. It is only when the evidence, with all the inferences the jury could justifiably draw from it, will be insufficient to support a verdict for plaintiff that the court is authorized to direct a verdict for defendants; and, unless the conclusion follows as a matter of law that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury, under proper instructions.

6.     MUNICIPAL CORPORATIONS — Streets — Damages — Sufficiency of Evidence. The evidence is discussed in the opinion and held sufficient.

(Syllabus by Brewer, C.)

*Error from District Court, Cleveland County;*

*R. McMillan, Judge.*

Action by Rebecca Dingus against Charles E. Abbott and another. Judgment for plaintiff, and defendants bring error. Affirmed.

*W. L. Eagleton,* for plaintiffs in error.

*J. B. Dudley,* for defendants in error.

Opinion by BREWER, C. This is a suit brought by Rebecca Dingus, as plaintiff below, against plaintiff in error, as defendants, to recover damages for personal injuries and the de-

struction of a carriage caused by a runaway team belonging to defendants. The cause was tried to a jury, and a verdict returned in plaintiff's favor for the sum of $235. The defendants below, feeling aggrieved, have brought the case here for review, and argue for a reversal, three propositions: First, the sufficiency of the petition; second, the sufficiency of the evidence; and third, the giving of certain instructions and the refusal of others. We shall discuss the points in the order named.

(1) Are the allegations of the petition sufficient? It was not attacked in the lower court by demurrer or motion to make more definite and certain. Its sufficiency was first challenged by an objection to the introduction of any evidence. As a premise it may be said, in the beginning, that this form of attack does not seem to be favored in this state. In *Johnson v. Chapman,* 38 Okla. 42, 131 Pac. 1078, it is said:

"Where the sufficiency of a petition is challenged solely by an objection to the introduction of evidence thereunder, such objection, not being favored by the courts, should generally be overruled, unless there is a total failure to allege some matters essential to the relief sought, and should seldom, if ever, be sustained when the allegations are simply incomplete, indefinite, or conclusions of law."

See, also, *M., O. & G. Ry. Co. v. McClellan,* 35 Okla. 609, 130 Pac. 916; *Hogan v. Bailey,* 27 Okla. 15, 110 Pac. 890.

We shall view the petition in the light of the rule announced above, and will say, by way of further premise, that the elements entering into actionable negligence, where it is not claimed that the action was willful or intentional, are: First, the existence of a duty on the part of the defendant toward the plaintiff; second, the failure to perform that duty; third, injury to the plaintiff because of such failure. *C., R. I. & P. Ry. Co. v. Duran,* 38 Okla. 719, 134 Pac. 876; *St. L. & S. F. R. Co. v. Lee,* 37 Okla. 545, 132 Pac. 1072, 46 L. R. A. (N. S.) 357; *C., R. I. & P. Ry. Co. v. McIntire,* 29 Okla. 797, 119 Pac. 1008.

The petition states, in substance, that the plaintiff and her young daughter were riding in a carriage drawn by a horse on Main street in the city of Norman, en route home from church, and just as they reached a certain point (named) a large team of horses belonging to defendants, hitched to a dray-wagon, came running up behind the carriage and, without warning or knowledge upon the part of the plaintiff, struck and overturned the carriage, rendering it worthless, throwing the plaintiff and her child upon the ground whereby she was injured, the particulars of her injuries being fully described. The negligence of defendants is set out in paragraph 2 of the petition, which follows:

"The plaintiff further states that a few minutes prior to said accident, the defendants' servant, Ivy Brown, under the direction of the defendants, was using and driving said team, hitched to a wagon on said street in said city, and that said team was wild and unruly, and the bridle, bridle bits, lines, and harness in general, which were then being used on said team by the servant of said defendants, were of an inferior grade, and on account of the negligence and carelessness of the defendants in this respect, and the negligence and carelessness of the defendants' servant in the use and management of said team, said team ran away, and in so doing struck plaintiff's carriage at the time and place, and in the manner aforesaid, on account of which plaintiff sustained and received the injuries aforesaid, without any fault or negligence upon her part; that the carriage in which plaintiff was riding at the time of said accident had a top on it, and the back curtain thereof was fastened down, and the plaintiff was unable to see or hear said team, and the accident occurred and the injuries resulted without any fault or negligence on the part of plaintiff."

Considering the petition, it will not be disputed that a traveler on a city street is under a duty at all times to other travelers. He is under the duty to use reasonable care not to collide with or injure other travelers. This duty is very well stated by Judge Thompson in his work on Negligence, vol. 1, sec 1284:

"The obligation which the law imposes upon a driver is to exercise reasonable care, to the end of keeping his horses and vehicles under such control as to be able to prevent a collision with another driver or a foot passenger on the highway."

And in section 1283 the same author says:

"While the law does not make a traveler upon the public street or highway an insurer against accidents which may happen in consequence of his being there, yet it demands of him the exercise of what is described, in books of the law, to be reasonable or ordinary care. As in every other situation, this degree of care is a care and foresight commensurate with the danger to others which attends the particular situation."

And in 37 Cyc. at page 275, it is announced in the text:

"Drivers of vehicles in a public highway must not drive recklessly, but must use due care to prevent injury to others in the highway, to avoid collisions, and to avoid pedestrians, children, or persons working in the highway. A driver is in general negligent if he fails to have a proper equipment."

To sustain which the author cites numerous illustrative cases which may be read with profit.

The defendants being under the duty to plaintiff of reasonable care, does the petition sufficiently allege a failure to perform that duty? The plaintiff alleges that she was driving along the city street with care; that defendants through their servant were also driving along the street with a wagon drawn by two horses; that the horses were *"wild and unruly,"* and that the *"bridle, bridle bits, lines, and harness in general"* being used at the time, were of *"an inferior grade,"* and that "on account of the negligence and carelessness of the defendants in this respect, and the negligence and carelessness of the defendants' servant in the use and management of said team," it ran away, etc., and collided with plaintiff's carriage, causing the damage complained of, etc. Now this petition is open to the criticism that it is not as definite and specific as it ought to be and doubtless would have been made under a proper and timely motion; but it certainly, taking its facts together with the conclusions added, shows a failure of duty. This is the test it is put to under the doctrine stated in *Johnson v. Chapman, supra.*

We are also of the opinion that the point made as to the sufficiency of the evidence, which was raised by a demurrer thereto at the trial, cannot be sustained.

"It is only when the evidence, with all the inferences the jury could justifiably draw from it, will be insufficient to support a verdict for plaintiff that the court is authorized to direct a verdict for defendants; and, unless the conclusion follows as a matter of law that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury, under proper instructions. *Booker Tobacco Co. v. Waller,* 38 Okla. 47, 131 Pac. 537; *Chickasha Street Ry. Co. v. Wund,* 37 Okla. 582, 132 Pac. 1078; *M., K. & T. Ry. Co. v. Walker,* 27 Okla. 849 [113 Pac. 907]; *Fidelity Mt. Life Ins. Co. v. Stegall,* 27 Okla. 151, 111 Pac. 380; *Moore v. First Nat'l Bank of Iowa City,* 30 Okla. 623 [121 Pac. 626]."

We have read the entire evidence introduced, and it is conflicting, and we cannot say that there is a total want of evidence on the part of plaintiff. There was evidence that after the injury one of the defendants made statements tending to show negligence. There is other evidence tending to show that the young man driving the team abandoned the same unnecessarily, and left them to run wild without restraint. It is true the evidence of defendants contradicts this, and may even be more convincing to us than that of plaintiff, but still, the jury saw the witnesses and heard them, and evidently believed those supporting the idea of negligence. We reproduce on this point a portion of the testimony:

"Q. Do you know who he was? A. I don't know his name; he was a young man. Q. Where did you see the team again? A. Yes; they went on east; they crossed up here, and still were going east, and I was up there at the upper end of this second block, and he got in about where the middle butcher shop is now, and this young man's hat blew off to the south, and he fell off of the wagon—I don't know—he made a leap to get off of the wagon and pick up his hat, and the team broke this trot and struck a lope, and myself and two or three others there thought the team was going to head into the barn, and after they missed the barn they went on east. Q. Now, what speed was this team going at the time you saw this boy's hat fall off?

A. They just about quit trotting and struck up a lope about the time he quit the wagon. Q. A fast trot up to that time. A. Yes, sir; a fast trot. Q. You saw the speed was faster after he got off? A. Oh, yes; certainly faster. Q. Now, at the time you saw this team going down there before the boy jumped off, what do you say the facts are, whether the team was running away at that time? A. Why, I don't think they was; no, sir. They was just in a good stiff trot. Q. What do you say as to whether or not the team appeared to be frightened at that time? A. I wouldn't call them a frightened team; they just wanted to go."

It certainly would not be contended that the driver of a team of large young spirited horses would not be negligent if he jumped from the wagon to get his hat and let them run on, under no restraint, down the street. This evidence certainly tends to show that he did so. Of course, upon the other hand, it is claimed that the driver only abandoned the team out of dire necessity and to protect his own life; but, as we have said, the jury passed on this evidence, and, taken in its aspects most favorable to plaintiff in her contention, we think that it is clear that it is sufficient to support the verdict of the jury.

Some argument is made as to a number of the instructions, but we have examined all of those given and those offered and refused, and have become fully convinced that no reversible error appears. Of the ten prepared instructions requested by the defendants, we find that five were given by the court as requested, that four were given with slight modifications, and one was refused outright. And taking the instructions throughout, it seems to us that they follow the defendants' view on all the material phases of the case as to the law involved. There are some verbal inaccuracies, the language is slightly twisted in a few sentences; but when considered as a whole, the law applicable is very clearly charged. We do not believe that we would be justified in taking up the numerous instructions and setting them out and analyzing them, because it is very clear to us that no substantial error was committed.

By the Court: It is so ordered.