## FT. SMITH & W. R. CO. v. KNOTT et al.

No. 6573. Opinion Filed July 25, 1916.

Rehearing Denied September 8, 1916.

(159 Pac. 847.)

**1. Appeal and Error—Review—Waiver of Assignments.**

Only such assignments of error as are argued in the brief of plaintiff in error will be considered by this court.

**2. Trial — Demurrer to Evidence — Overruling.**

Unless the evidence and all inferences which a jury could justifiably draw from it is insufficient to support the verdict for plaintiff, a demurrer to the evidence should be overruled.

**3. Death—Right of Recovery—Circumstantial Evidence.**

In an action for damages for the negligent killing, though the evidence be circumstantial, a recovery may be properly had if such circumstantial evidence is sufficient to prove the facts alleged in the petition.

**4. Master and Servant—Injuries to Servant—Assumption of Risk.**

A servant does not assume the risks and hazards of the failure of the master to provide a reasonably safe place in which to work and reasonably safe appliances with which to work, unless the want of care on the part of the master and the danger arising from it are so obvious that an ordinarily careful person under the circumstances would observe the one and appreciate the other.

**5. Trial — Instructions — Applicability to Facts.**

It is not error to refuse to give a requested instruction upon the question of the assumption of risk which deals solely with the ordinary risks and hazards, and embodies no definition of such risks and hazards, nor any qualification appropriate to the particular facts of the case, which involves a question of extraordinary hazards.

**6. Removal of Causes—Right to Removal.**

Where the plaintiff, as a resident of the Western judicial district of the United States for the state of Oklahoma, brings an action in the district court of a county in the Eastern judicial district of the United States for the state of Oklahoma, a petition by the defendant to remove said cause from the said district court to the United States

Circuit Court of the Eastern Judicial District of the State of Oklahoma, upon the sole ground of diversity of citizenship, should be denied.

## 7. Master and Servant—Injuries to Servant—Actions—Evidence—Sufficiency.

Evidence in this case carefully examined, and held sufficient to sustain the verdict rendered.

(Syllabus by Collier, C.)

Error from District Court, Pittsburg county; A. H. Huston, Assigned Judge.

Action by Ella L. Knott, administratrix, etc., against the Ft. Smith & Western Railroad company and others. There was a judgment for plaintiff, and defendants bring error. Affirmed.

C. E. & H. P. Warner, for plaintiffs in error.

Johnston, Robinson & Rice, W. N. Redwine, J. N. Roberson, and Henry S. Johnston, for defendant in error.

Opinion by COLLIER, C. This action was instituted against the plaintiff in error, St. Louis, El Reno & Western Railroad company, A. F. Daugherty, and J. F. Flickenstein, by defendant in error, to recover damages for the death of the son of the defendant in error, caused by the negligence of the plaintiffs in error. Hereinafter the parties will be referred to as they appeared in the trial court.

The record shows that the plaintiff was a resident of the Western United States judicial district of the state of Oklahoma; that the Ft. Smith & Western Railroad Company was a corporation nonresident of the state of Oklahoma; that the other defendants resided in this state; and that the cause was pending in the district court of Pittsburg county, which is in the Eastern United States judicial district of the state of Oklahoma. On the 25th day of August, 1910, said Ft. Smith & Western Railroad Company filed its petition and bond for removal of the cause to the United States Circuit Court of the Eastern District of Oklahoma, on the sole ground of diversity of citizenship, which was denied on the 19th day of October, 1910, upon the ground that there was no diversity of citizenship, as several of the defendants were residents of the state of Oklahoma. Thereafter the Ft. Smith & Western Railroad Company filed its demurrer to the petition, on the ground that the petition does not contain facts sufficient to constitute a cause of action against the said defendant, which demurrer was overruled and the overruling of said

demurrer duly excepted to. Thereupon the defendant filed answer, denying the allegations of the petition.

The uncontradicted material evidence in the case is that the plaintiff was the duly appointed and qualified administratrix of the estate of the deceased; that at the time of his death the deceased was the head brakeman on the train from which the car hereinafter referred to was detached; that he was in the employ of the Ft. Smith & Western Railroad Company as brakeman; that he was about 30 years old, nearly 6 feet tall, and strong, and had had about 10 years' experience as a brakeman; that on the day of his death he was on the car which had been switched to the main line, cut loose, and was proceeding alone down the main track at the rate of from four to six miles an hour; that he car was partially loaded with coal, and that the last time the deceased was seen alive he was about 6 feet from the end of the car, going in the direction of the brake; that no one saw him fall from the car; that within a few minutes after he was seen walking towards the end of his car his body was found between the rails and 30 or 40 feet in the rear of the car upon which he had been, and about 250 feet from the point where the car was switched to the main line; that the body had not been crushed, but had the appearance of having been rolled.

The evidence is in conflict as to the condition of the car being called to the attention of the Ft. Smith & Western Railroad Company and as to when said car was repaired and as to its condition at the time of the fatal accident.

There was evidence to show that the running board, for the brakeman to stand upon, of the car was split and wabbly; that there were defects in the braking apparatus; that the ratchet wheel had one tooth missing; that the brake staff was slightly bent; that in setting the brake it was hard to move; that the wheel or brake staff was loose; that the wheel would play up and down and did not fit tight on the staff; that the staff was bent about halfway down from the brake wheel to the end of the staff; that the end of the staff fits on a keeper and has a hole through it for the pin to be placed, but the pin was gone, and the brake staff could not be lifted up out of the keeper; that the car was examined immediately after the finding of the body, and the brake was not set; that in winding up the brake the brake staff would strike the end of the car where the bend was and would bind; that immediately after the accident an examination was made of the brake of the car upon which the deceased had just previously been, and the re-

sult thereof showed that the person attempting to operate said brake was thrown from the car and caught on the bumpers, and consequently was not thrown to the ground. The car inspector for the company testified that their records did not show that any inspection of the car in question had been made between December and March 19th; that after the accident the inspector was sent to inspect the car, and found it in good serviceable condition; that the brake staff had a slight bend in it just above the ratchet wheel, which was all, except the footboard had a slight crack, running a short distance from one end.

The defendant also offered evidence that on the night preceding the accident plaintiff's intestate was intoxicated and carried liquor with him to Sparks, the point at which he met his death the next morning, and that the deceased was a little lame in one foot.

In rebuttal, plaintiff offered evidence that the deceased was sober when he came to work on the morning of the day on which he was killed, and parties who saw him several times during the day did not observe any indications of liquor upon him.

There was evidence as to the expectancy of the life of the plaintiff; that the deceased was unmarried and left no children; that prior to his death he lived with his mother; that he contributed to her support; that his wages were from $60 to $70 per month, and sometimes ran up as high as $100 or $102 per month, and that he always helped to support his mother, and gave her from $30 to $40 per month; that when he was at home, as long as she had anything to buy, he was always there with the money to pay for it; that he was more like the father of the family than a brother and son; that when he was at home she never had anything to do with the grocery bill; that he would pay all that; that he would ask if they wanted anything, and, if they did, would tell him what they wanted, and he would get it for them; that he was absent from home a good deal during the last two years; that he was home once in a while; that during the time of his absence he contributed to her support. Thereupon a demurrer was interposed to the evidence by the defendants, and the same sustained as to all of said defendants except the Ft. Smith & Western Railroad Company, there being no liability shown against said defendants, except said Ft. Smith & Western Railroad Company, to which said company duly excepted. Upon the sustaining of the demurrer as to all of the defendants except the Ft. Smith & Western Railroad Company the said railroad company tendered for filing its second petition and bond for removal of the cause from the district court of Pittsburg county to the United States Circuit Court for the Eastern District of the State of Oklahoma, which was denied, to which ruling of the court said defendant duly excepted. Thereupon the Ft. Smith & Western Railroad Company moved the court for peremptory instructions, in its favor, which motion was overruled, and to which action of the court the defendant duly excepted.

The instructions given by the court, to which exceptions were duly saved, and which are argued in defendant's brief are in the following words:

"(8) A master or employer owes his servants or employes the duty of furnishing to them a reasonably safe place wherein to work and reasonably safe tools and appliances with which to work, and his failure to use reasonable and ordinary care in providing a reasonably safe place and reasonably safe tools and appliances may constitute negligence; and, if the injury results to the employe by reason of such negligence. and the employe exercises reasonable care himself to avoid injury, then the employer would be liable in damages for such resulting injury.

"An employer cannot be held to insure the safety of his employes, but he must, as I have said, exercise reasonable care and diligence in providing a reasonably safe place where, and reasonably safe appliances with which, to work.

"Before you can find for the plaintiff in this case you must find from a preponderance of the evidence that the defects, or some of the defects complained of in connection with the braking apparatus of the car, actually existed; second, that the defects were of such a character as could have been seen and known by the agents and employes of the company whose duty it was t examine and inspect the same in the exercise of reasonable care and diligence upon their part in making such inspection or examination; third, that such defects must have been of such character as that it could have been reasonably foreseen that some injury would result to a person operating said brakes while the car was in motion; and, fourth, that such defects were the proximate cause of the death of the deceased. If the plaintiff has failed to establish all of these matters by a preponderance of the evidence, then she cannot recover.

"Upon the other hand, if you find from a preponderance of the evidence that the defendant the Ft. Smith & Western Railroad Company had the deceased in its employ as

a brakeman, and that in the course of his employment he went upon a certain car of said company known as 5373 to operate the brake thereon, and that such car, or the braking appliances thereon, had been permitted to become defective and out of repair in the manner set forth in the petition, and that such defects were of such character as that it could reasonably have been foreseen that some injury would result to a person operating the braking appliances, and that such defects actually caused the deceased to fall from the car, and that the plaintiff himself was in the exercise of due care for his own safety, and did not, by his own carelessness, contribute to the accident which caused his death, then your verdict should be for the plaintiff."

"No. 10. If you find for the plaintiff, then the measure of her damages would be the pecuniary value of the life of her son to her. That is, the amount of money or value of any property which you may find the plaintiff would have received from her son had he lived. She cannot recover for any suffering on the part of the deceased, nor for any mental distress or grief upon her own part by reason of the death of her son, nor for any loss of his society, but only, as I have stated, for such money or property as you may find he would have contributed to her during his life. And in estimating such amount you may take into consideration the general health of the deceased, his general habits of life, his earning capacity, measured by what he ordinarily had earned, his disposition to contribute to the plaintiff, and his power to contribute in view of his manner of life, and also the probable duration of the life of the plaintiff."

The instructions requested and refused by the court and argued in defendant's brief are:

"(12) The jury are instructed to find for the defendant if they find from the evidence that the brake rod or staff attached to the car in question was bent in such manner as to endanger the safety of the deceased, Thad Knott, or if they find that the running board on the car in question was split in such manner as to endanger safety; and, if they find that such defects did in fact exist, and that they were obvious and patent, such as could be seen by the said deceased in the exercise of ordinary and reasonable care, then you are instructed the said deceased assumed the risk of injury from such patent and obvious defects, and, if you so believe, your verdict will be for the defendant."

"(17) The jury are instructed that a servant, when he engaged in a particular employment, is presumed to do so with the knowledge of and a taking of the risks of its ordinary hazards; that is to say, in this case, if you find that the deceased, Thad Knott, was in the employ of the defendant

railroad as a brakeman, the law presumes that he accepted such employment as a brakeman with the knowledge of and a taking of the risks of the ordinary hazards of such employment.

"(18) The jury are instructed as a matter of law that a servant when he enters the service of an employer impliedly agrees that he will assume all risks which are ordinarily and naturally incident to the particular service in which he engages; and, if the jury believe from the evidence that the injury to the deceased, Knott, was only the result of one of the risks ordinarily incident to the work in which the said Knott was engaged, and not otherwise, the plaintiff cannot recover in said cause, and your verdict should be for the defendant."

The jury returned a verdict in favor of the plaintiff and against the Ft. Smith & Western Railroad Company in the sum of $4,000, to which defendant duly excepted. Timely motion was made for a new trial, which was overruled and duly excepted to and this appeal prosecuted.

In neither the original nor the reply brief of defendant are assignments of error set out as required by rule 26 of this court (47 Okla. x), but in the reply brief of defendant is copied the petition in error filed herein. In the original brief of defendant the following statement is made:

"The petition in error filed herein contains numerous assignments of error, but in argument we will consider the propositions which are embraced in the petition in error under the following divisions: (1) The injury complained of is not connected with the negligence alleged, and the demurrer to plaintiff's evidence should have been sustained; (2) error in refusing and giving instructions; (3) error in refusal of removal to the federal court."

The only errors argued in the brief of defendant are the overruling of the demurrer to the evidence, the giving of the instructions respectively numbered 8 and 10, and the refusal to give requested instructions respectively numbered 12, 17, and 18, and the refusal of the court to remove the cause from the said district court to the United States Circuit Court for the Eastern Judicial District of Oklahoma.

Our review will be confined to the alleged errors argued in the brief of defendant.

It is a settled rule that a demurrer to the evidence admits every fact which the evidence in the slightest degree tends to prove and all inferences and conclusions which may be logically drawn from the evidence. St. L. & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1038; Wm. Cameron & Co. v. Henderson, 40 Okla. 648, 140 Pac. 404.

In every case involving negligence, as between master and servant, three elements are essential to constitute actionable negligence, when the wrong charged is not willfully and wantonly done, viz.: (1) The existence of the duty on the part of the master to protect the servant from the injury; (2) failure of the master to perform that duty; (3) injury to the servant resulting from said failure. M. V. R. Co. v. Williams, 42 Okla. 444, 141 Pac. 1103; St. L. & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083.

While the evidence is in part in conflict, and much of it circumstantial, we are of opinion that there is evidence from which a jury could reasonably find that the defendant did not furnish plaintiff's intestate with a reasonably safe place in which to work and reasonably safe appliances with which to work, as was its duty, and that the failure to perform this duty was the proximate cause of the injury, and that such defects in the braking apparatus were not so obvious that an ordinarily careful man would observe such defects and apprehend the danger.

"Where decedent was killed by the operation of an elevator and there was no direct proof, but circumstances indicated a strong probability of his death resulting from the defective condition of the brake and the fall of a counterbalancing weight, the judgment will be affirmed, although the evidence is wholly circumstantial. The existence of an ultimate fact need not be shown by direct evidence but may be proven by circumstances." Winkle v. Peck D. G. Co., 132 Mo. App. 656, 112 S. W. 1026.

"In an action against a railroad company for damages for negligently causing the death of the plaintiff's intestate, if, from all the facts and circumstances proved, the inference arises that the deceased was exercising due care, and that his death was caused while using a defective brake on one of the defendant's cars, a recovery is justified, although no direct evidence is given by witnesses of the accident. In such a case, it is not the province of a court to say to a jury, as a matter of law, what facts and circumstances were sufficient to show that the death of the plaintiff's intestate was caused by defective machinery." "The verdict will be upheld if these facts are made to affirmatively appear, either directly or circumstantially." Cincinnati, etc., R. Co. v. McMullen, 117 Ind. 439, 20 N. E. 287, 10 Am. St. Rep. 67.

"Even though an employe has opportunity to notice some defects, the master is not relieved from failure to provide safe place for the employes." Allison v. Stivers, 81 Kan. 713, 106 Pac. 996.

"Where evidence, although circumstantial, is sufficient to show probability of the facts alleged, plaintiff has proven his case." **Patty** v. Salem F. M. Co., 53 Or. 350, 96 Pac. 1106, 98 Pac. 521, 100 Pac. 298.

We are of opinion that the court did not err in overruling the demurrer to the evidence.

"It is only when the evidence, with all the inferences the jury could justifiably draw from it, will be insufficient to support a verdict for plaintiff that the court is authorized to direct a verdict for defendants; and, unless the conclusion follows as a matter of law that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury, under proper instructions." Abbott v. Dingus, 44 Okla. 567, 145 Pac. 365.

We have carefully considered instructions given by the court, respectively, 8 and 10, and are of the opinion that each of said instructions correctly states the law. St. L. & S. F. R. Co. v. Brown, 45 Okla. 143, 144 Pac. 1075; Big Jack Mining Co. v. Parkinson, 41 Okla. 125, 137 Pac. 678.

The vice of refused charge No. 12 is that it singles out a part of the evidence as to the negligence of the defendant, instructs the jury that if the brake rod or staff attached to the car was bent in such manner as to endanger the safety of the deceased, or if they find that the running board on the car in question was split in such manner as to endanger safety, while the evidence discloses many other defects in the braking apparatus of the car, and this instruction authorized a verdict for the defendant regardless of the fact that there were other defects in the braking apparatus, as shown by the evidence, than those enumerated in said instruction, which may have caused the death of the deceased, and which tended to show that the defendant was guilty of negligence in not furnishing plaintiff's intestate a reasonably safe place to work and reasonably safe appliances with which to work, which negligence was averred to be the proximate cause of the death of plaintiff's intestate. Again, under the evidence in this case, the deceased did not assume the risk of the defendant's failing in its duty to furnish him a reasonably safe place in which to work and reasonably safe appliances with which to work. There is no evidence in the record that the defects in the braking apparatus were so obvious that an ordinarily careful man in the situation of the deceased would have observed such defects and appreciated the danger, and therefore the defendant was not entitled to an instruction that the deceased assumed such extraordinary hazard. In Chesapeake & O. R. Co. v.

John J. De Atley, 241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016, it is held:

"There is no error in refusing to give a requested instruction upon the question of the assumption of risk which deals solely with the ordinary risks and hazards, and embodies no definition of such risks and hazards, nor any qualification appropriate to the particular facts of the case, which involves a question of extraordinary hazard."

In the body of the opinion it is said:

"According to our decisions, the settled rule is not that it is the duty of an employe to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or those for whose conduct the employer is responsible, but that the employe may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person under the circumstances, would observe and appreciate them." Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521; Seaboard Air Line Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.

If the instruction be held to be a correct instruction as to contributory negligence, the same is, in effect, covered by the instructions given by the court. We are of opinion that the court did not err in refusing to give the jury said requested instruction No. 12.

Each of the refused instructions 17 and 18 is predicated upon the assumption by the plaintiff's intestate of the risk and hazard, which resulted in the death of the plaintiff's intestate, and with this contention we cannot agree. The negligence complained of is the failure of the defendant to furnish a reasonably safe place in which to work and reasonably safe appliances with which to work, and the risk of such failure on the part of the defendant was not one of the ordinary risks of the employment which the servant assumed, and the court did not err in refusing to give said instructions 17 and 18.

In Armour et al. v. Golkowska, 202 Ill. 144, 66 N. E. 1037, it is held:

"The duty of the master to provide a reasonably safe place for the servant to work is a positive one, and his noncompliance therewith is not one of the ordinary risks assumed by the servant."

In Nall, Adm'x, v. Louisville, etc., R. Co., 129 Ind. 260, 28 N. E. 183, 611, it is said:

"The master's duty to his employes to provide safe places for them to work is a continuing one, and requires him to use ordinary care to keep them safe; and if they become unsafe through his neglect, * * * he must answer in damages to a servant, who is injured thereby, who is himself free from contributory negligence."

In C., R. I. & P. R. Co. v. Townes, 43 Okla. 568, 143 Pac. 680, Turner says:

"As the risk of negligence of the master in failing to use ordinary care to keep the place in which plaintiff had to work reasonably safe was not a risk assumed by the plaintiff, and, as there is no evidence of contributory negligence upon his part, we need not consider the charges of the court concerning those defenses, as they are not involved in this case"

—and cited with approval 20 Am. & Eng. Enc. of Law, 55, which says:

"In accordance with the rule that reasonable care must be taken to protect one's servants from injury, masters owe to their servants the duty of providing them a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment, having regard to the character of the service required and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. This is a positive duty which the master owes, and is not one of the perils or risks assumed by a servant in his contract of employment. * * * "

The record discloses that the plaintiff was and is a resident of this state; that the Ft. Smith & Western Railroad Company was and is a nonresident corporation; that this cause was pending in the district court of Pittsburg county, which is a part of the Eastern judicial district of this state; that the sole ground of removal of said cause was the diversity of citizenship. That under the facts presented by the record for the removal of said cause a cause cannot be removed from a state to a federal court is not an open question in this jurisdiction. In the elaborate and well-considered opinion of Justice Sharpe, in St. L. & S. F. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60, which is fortified by many opinions of the Supreme Court of the United States, it is held:

"An action brought in a state court outside of the federal court district of the plaintiff's residence is not, on objection by plaintiff, removable to the federal court on the petition of the defendant, who is a resident of another state, as sections 1 and 2 of Act Cong. March 3, 1887, c. 373, 24 Stat. 552, as amended by Act Cong. Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. Stat. 1901, pp. 508, 509), provide that, where jurisdiction of the federal court is founded upon diversity of citizenship, suit shall be brought only in the district of the residence of either plaintiff or defendant, and that suits of a civil nature, at law or in equity, may be

removed into the federal court for the proper district by the defendant or defendants therein, being nonresidents of the state. To permit the removal would not take the cause to 'the proper district' within the meaning of the statute, but, instead, into a district of which neither plaintiff nor defendant was a resident."

The court did not err in refusing to transfer the cause from the district court of Pittsburg county to the United States Circuit Court for the Eastern District of Oklahoma.

There being evidence, though the evidence was in conflict and much of it circumstantial, to reasonably support the finding of the jury, this court will not disturb the verdict when the cause is submitted to the jury under proper instructions. Dunn v. Carrier, 40 Okla. 214, 135 Pac. 337; Rumbaugh v. Rumbaugh, 39 Okla. 445, 135 Pac. 937; Elwell v. Purcell, 42 Okla. 1, 140 Pac. 412.

There being no error in the record, this cause should be affirmed.

By the Court: It is so ordered.