**DUNCAN ELECTRIC & ICE CO. v. CHRISMAN.**

No. 4820—Opinion Filed May 9, 1916.
Rehearing Denied June 6, 1916.
(157 Pac. 1031.)

1. **Electricity—Liability for Injuries—Care Required.**

It is negligence for an electric light company to maintain in the streets of a city a "primary wire" carrying a high voltage of electricity without having such primary wire insulated.

2. **Same—Proximate Cause.**

Where the injury received was caused by an uncharged wire coming in contact with an uninsulated wire, over which a high voltage of electricity was being conveyed, there being no contributory negligence, such uninsulated charged wire was the proximate cause of the injury received.

(Syllabus by Collier, C.)

Error from District Court, Stephens County; Frank M. Bailey, Judge.

Action by Mrs. Carrie Chrisman against the Duncan Electric & Ice Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thomas E. Touey and Burwell, Crockett & Johnson, for plaintiff in error.

Bond & Melton and Robert Burns, for defendant in error.

Opinion by COLLIER. C. This action is brought by the defendant in error, against the plaintiff in error, and other defendants, who were subsequently dismissed, and the case proceeded alone against the plaintiff in error, to recover damages for the wrongful death of the son of defendant in error. Hereinafter the parties will be designated as they were in the trial court. By its amended answer defendant admits its incorporation as alleged in plaintiff's petition, admits the death of Delos Flynn, the son of said plaintiff, the location and condition of its wires and poles along the main street of Duncan as alleged by plaintiff, as well as the location and condition of the wires and poles of the Pioneer Telephone & Telegraph Company, admits that said Delos Flynn met his death while engaged in moving back the poles of said telephone company, and that his death was due to a shock of electric current passing into his body, through a wire of the telephone company coming in contact with the wire of the defendant company, but denies negligence on the part of defendant and sets up the contributory negligence of the said Delos Flynn. The evidence was without conflict that the wire of the defendant company which came in contact with the wires in the hand of the said Delos Flynn was what is known as a "primary wire," and that at the time of the accident which caused the death of said Delos Flynn said wire carried a current of 2,300 volts of electricity; that said wire was uninsulated, and had been in that condition for several years; that the said Delos Flynn and another were upon the pole of the telephone company, which was being moved; that the wires of the defendant were below those of the telephone company; that while discharging his duties as an employee of said telephone company, it was necessary to lengthen the wires about said pole upon which he was working, and in so doing he held in his hand one end of such wire, the other end of which dropped and came in contact with said primary wire of the defendant, by which electricity was transmitted to his body, producing death. If there was any evidence to support the plea of contributory negligence interposed by the defendant, which we do not hold, such defense was abandoned. No question is raised by this appeal as to the assistance received, or expected to be received in the future by the plaintiff from her son, and hence we deem it unnecessary to state the evidence in regard thereto, or, for a proper review of this case, to consider any evidence other than that the dangerous condition of said primary wire for sometime had been called to the attention of the manager of the defendant, together with the danger of permitting said wire to remain in its uninsulated condition, and no effort had been made by the defendant to replace the uninsulated wire by properly insulated wires. Upon the conclusion of the testimony the defendant requested the court to direct a verdict for the defendant, which the court refused to do, and the defendant duly excepted. Among other instructions given, the court gave instructions, respectively 7 and 8, which were separately excepted to by the defendant. Said instruction No. 7 reads:

"You are instructed, gentlemen of the jury, that an electric light company which maintains its wires so near the wires used by a telephone company that the employees of the telephone company in the performance of their ordinary duties are liable to come in contact with such wires of the electric company, such electric light company owes the employees of such telephone company the duty of so constructing or insulating its wires as to render them harmless to the touch and to use reasonable and ordinary care to so construct and insulate its wires as to prevent injury to such employees of the telephone company while engaged in the performance of their duties, and without negligence upon the part of such telephone company's employees."

Instruction No. 8 reads:

"And you are instructed, gentlemen of the jury, if you believe from the evidence in this case that the electric light company's wires were maintained so near the wires of the telephone company that employees of such telephone company in the performance of their ordinary duties, with reasonable and ordinary care and caution, were liable to come in contact with said wires of said electric light company, either by direct contact or by reason of connecting wires, and if you further find from the evidence in this case that the defendant light company failed to use ordinary care and caution in protecting and insulating its wires, and that by reason of such negligence on the part of the defendant company, the deceased, Delos Flynn, while in the performance of his usual and ordinary duties, and without negligence or want of ordinary care and caution upon his part, was injured and killed, and if you further believe from the evidence in this case that the failure of the defendant electric company to insulate its wires or to use

reasonable and ordinary care in the construction of its wires was the proximate cause of such injury and death of said Delos Flynn, then your verdict should be for the plaintiff in such sum as you may find from the evidence and from the instructions hereinafter given you."

The jury returned a verdict for the plaintiff in the sum of $4,000. The defendant timely moved for a new trial, which was overruled, and judgment entered in accord with the verdict, to which the defendant excepted. To reverse said judgment the defendant brings error.

The defendant relies upon the following assignments of error.

"(1) The trial court erred in refusing to give the peremptory instruction requested by the defendant, which instruction is fully set out in the statement. (2) The trial court erred in giving instruction No. 7, which is fully set out in the statement. (3) The trial court erred in giving instruction No. 8, which is fully set out in the statement. (4) The trial court erred in overruling defendant's motion for a new trial, to which ruling of the court the defendant at the time then and there excepted and still excepts."

The vital questions in this case are: (1) Was the defendant guilty of negligence in maintaining said uninsulated primary wire? (2) If the said company was guilty of negligence, was such negligence the proximate cause of the death of plaintiff's son?

We are of the opinion that the defendant's act in maintaining the said primary wire, without having the same properly insulated, was negligence.

"A company maintaining electric wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the utmost care and prudence at places where others may have the right to go, either for work, business, or pleasure, to prevent injury. * * * So one who in the course of his employment is brought in close proximity to electric wires is not guilty of contributory negligence by coming in contact therewith, unless done unnecessarily or without proper precautions for his safety. And where the wires, if properly insulated, would not be a source of danger, such person is only obliged to look for patent defects and not for latent defects." Section 445, p. 462, Joyce on Electric Law.

"It is the absolute duty of an electric light company, conveying electricity by overhead wires strung through the streets of a city, to keep its wires constantly insulated so as to be prepared to guard against the effect of objects coming in contact with them, regardless of the facts and causes which may bring about the contact." Herbert v. Lake Charles Ice, etc., Co., 111 La. 522, 35 South. 731, 64 L. R. A. 101, 100 Am. St. Rep. 505.

In the well-considered case of Shawnee Light & Power Company v. Sears, 21 Okla. 13, 95 Pac. 449, Judge Dunn quotes with approval from Mr. Hammon on Evidence, and Jaggard on Torts, page 864, as follows:

"'Persons licensed to maintain overhead wires in public places for the transmission of electricity for power, illumination, or other purposes are bound to use a high degree of care for the protection of the public; and if, by reason of imperfect insulation or derangement of the wires, any one is injured in person or in property through contact therewith, a presumption of negligence arises which casts on the defendant the burden of showing that he exercised due care. * * * A live wire is exceedingly dangerous. So that proof of contact therewith and consequent damages makes out a complete case of prima facie negligence, and throws the burden on the defendant to show that such wire was in the streets without fault on his part.'"

In Simmons v. Shreveport Gas, Electric Light & Power Co., Limited, et al., 116 La. 1034, 41 South. 248. Judge Provosty, speaking for the court, says:

"The legal situation of electric light and power companies sending this potent fluid along their wires may be illustrated by comparing it to that of a showman conveying a caged tiger through the streets of a crowded city. The showman must not only make sure of the cage, and not himself open the door, but be vigilant in seeing that nobody else opens the door. He could hardly expect that he would be heard to plead that some negligent person had opened the door. Of course, the situation is incomparably more complicated in the case of an electric light or power company with its system of wires pervading an entire city and the appreciation of the facts in particular cases may be proportionately more difficult; but the principle is the same. Indeed, the prisoner of the company is more sleepless and subtle and in its stroke more quick and sure, whence the need of even greater vigilance in keeping it safe within its prison wire."

We do not think the view herein expressed is in conflict with the holding in Pollard v. Oklahoma City Ry. Co., 36 Okla. 96, 128 Pac. 300, Ann. Cas. 1915A, 140, as in said case there were various intervening causes, at long intervals. Nor are we able to accept the contentions of defendant that said case supports its claims of no liability.

Having reached the conclusion that maintaining said primary wire without having the same insulated was an act of negligence, we are to consider whether or not such negligence was the proximate cause of the death of the son of plaintiff. We are unable to agree with the contention of the defendant

that because the death of the said son was not caused by coming in direct contact with said primary wire, the negligence of the defendant was not the cause of said death. We of course, fully agree that the negligence of the company in maintaining an unsafe wire is not sufficient to hold the said defendant for the death, but that the negligence must be the proximate cause of the death.

"It is essential to plaintiff's cause of action that he show the negligence complained of was the proximate cause of his injury." Luehrmann v. Le Clede Gaslight Co., supra, App, 213, 104 S. W. 1128.

We are of the opinion that applying the rule invoked by defendant, in said case of Luehrmann v. Le Clede Gaslight Co., supra, there was sufficient evidence for the jury to find liability on the part of the defendant for the death of plaintiff's son. In Paducah Power Co. v. Parkman, 156 Ky. 197, 160 S. W. 932, 52 L. R. A. (N. S.) 586, it is said:

"Electricity is a dangerous and deadly thing. It is a substance that gives no warning of its presence, and, when wires are heavily charged and not properly protected, it is fatal to the person who comes in contact with them. But the danger does not stop with the peril of coming in contact with the wire intended to, and that does convey the current, as electricity may be imparted in equally deadly volume to other wires and other things that this wire may touch, and, when it is imparted, for example, to another wire, this wire may become as dangerous as the one set apart for the conveyance of the electricity. This well-known characteristic of electricity puts upon persons manufacturing and selling it the duty of exercising a high degree of care to prevent its escape from the place intended for its use and to keep it confined to the instrumentalities set apart by them for its conveyance. Purveyors of electricity fully understand the danger attending its escape, and are aware of the fact that the danger of the charged wire will be conveyed to another otherwise harmless wire that touches it, and there should be applied to them the familiar rule in the law of negligence that persons are to be held responsible for all the reasonable and natural consequences which a prudent and experienced person, fully acquainted with the circumstances, might reasonably anticipate would follow his acts of negligence. Kentucky Heating Co. v. Hood, 133 Ky. 383, 118 S. W. 337, 22 L. R. A. (N. S.) 588, 134 Am. St. Rep. 457; Shearman & Redfield on Negligence, vol. 1, sec. 29.

"Keeping in mind the rule in this state that the utmost degree of care must be exercised to keep electric wires protected so as to prevent injury by coming in contact with them, it is difficult to understand upon what sound principle a distinction can be made between the measure of care that should be exercised to prevent danger to those coming directly in contact with the charged wire and to prevent danger to those coming in contact with another wire to which the charged wire has imparted its fatal energy. There seems to us no room or place for any distinction between the two conditions. If the charged wire is properly protected, it is comparatively safe under all circumstances; if it is not properly protected, it is dangerous under all circumstances. This being so, there is no reason why the duty of exercising the same high degree of care to safely secure electricity should not be required under all circumstances. The negligence consists in the failure to confine electricity to the place set apart for its use, and it is not so material how many independent agencies intervene if the injury is directly traceable to the failure to perform this duty. It is only when the evidence with all the inferences the jury could justifiably draw from it will be insufficient to support a verdict for plaintiff that the court is authorized to direct a verdict for defendants; and, unless the conclusion follows as a matter of law that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury, under proper instructions." Abbott v. Dingus. 44 Okla. 567, 145 Pac. 365.

We are of the opinion that the court did not err in refusing to direct a verdict for the defendant.

We have carefully examined instructions 7 and 8, and do not find that they are subject to the criticism of the defendant "that they are likely to confuse and mislead the jury," and are unable to see that the giving of said instructions 7 and 8 were prejudicial errors.

This case should be affirmed.

By the Court: It is so ordered.