## CITY OF MARLOW v. PARKER.

No. 25814.  Sept. 8, 1936.

Rehearing Denied Sept. 29, 1936.

R. H. Brown and M. W. Pugh, for plaintiff in error.

Bond & Bond, for defendant in error.

PHELPS, J.  The defendant city owned and operated a municipal light and power plant. From one of its lines the plaintiff received an electric shock which seriously injured him. He recovered a verdict and judgment therefor, and the defendant appeals.

The defendant's first contention is that the evidence was insufficient to sustain the finding that it was negligent. From the evidence the jury was warranted in believing the following to be the facts:

One of the defendant's main distributing lines was strung along an alley, such line being about 18 feet above the ground. One hundred feet south of this line was a dwelling house. The eaves of the house were eight or ten feet above the ground. A wire for the conducting of electricity was by the defendant connected with the main line in the alley and strung to the eaves of the house, where it was fastened to a knob. This service wire had been used for supplying former tenants of the house with electricity. For several years prior to the date of the injury the insulation on a strip of this service line had been worn off, so that for some little distance the naked wire was exposed.

The plaintiff, a boy about 11 years of age, lived in the house with his father and mother and half brother. His father rented the house from the owner. The family did not use electric current, and had never used it in that house. They had lived there about five months when the accident occurred. It is not shown how long it had been since any tenant in the house had used electricity. It is shown, however, that portions of the wire were uninsulated as long back as a year and a half prior to the accident.

On the day of the accident the plaintiff and his half brother, who was about the same age, were playing in the back yard near the vicinity of the service wire, which sagged possibly a foot at a point a few yards from the eaves of the house. The plaintiff was swinging a piece of old wire around him and over his head, and in the course of this play the wire which he was swinging touched the uninsulated part of the service wire above his head. The defendant's current thereby entered the boy's body, knocking him to the ground, rendering him unconscious for some while, and resulting in serious and permanent injuries, among

which was the loss of an eye. We note the defendant's assertion that the boy had made a hook on the end of the wire which he was swinging, and that he received the shock as a result of reaching up and hooking the wire which he held onto that of the company. This appears to be more or less of an assumption of the defendant, since the record reveals that both boys testified that no hook was on the end of the wire, but that it bent when it struck the service line, and that the force of the blow caused the bending of the wire which the boy was swinging, which then caused it to hang on the service line. The defendant's witnesses testified that the manner of stringing this service line was in accord with the methods usually used by careful power companies, and that it is not the usual custom or practice of electric companies to maintain perfect insulation on service lines where they are attached to houses. These witnesses also testified that if service lines are attached to houses high enough to be beyond the reach of a person on the ground they are considered safe enough to meet the safety requirements of such companies.

The defendant argues that it observed the requisite degree of care in the premises by keeping the service line higher than a normal person's reach, since under such circumstances it was not reasonably to be anticipated that such an accident as is involved here would occur. The cases cited by the defendant, however, almost entirely involve instances where the plaintiff was a trespasser, or where the live wire was placed in some position which in the exercise of due care no person would be expected to reach, such as a wire strung under a bridge, or on the top of a house with no means of access thereto. It is manifest that such authorities, though in point, do not control this case.

Plainly speaking, the hub of the matter is whether the company should have anticipated that some person, free of negligence himself, might reasonably be expected to come into contact with the wire. Was the care commensurate with the danger? It is clear that such contact as might be made by an individual's body against the wire is not all that the company should have anticipated, but that in addition thereto it should have anticipated that people sometimes carry objects which extend above their own reach, which objects themselves are conductors of electricity. Eight feet is not high; there are many tools, instruments of repair, implements and other articles used daily in connection with the maintenance and upkeep of a house and its surroundings which easily extend more than eight feet into the air, when carried upright by a person of average size. The electric company is charged with anticipating such reasonable contingency. See discussion of this point in Duncan Electric & Ice Co. v. Chrisman, 59 Okla. 67, 157 P. 1031, at 1033.

It should have been anticipated that children live in dwelling houses and that they play in the back yards thereof. It is common knowledge that children play quite vigorously, and certain'y true that a boy of 11 years will swing wires, ropes, and, for that matter, almost anything that can be swung. If the custom of the defendant company, and others distributing electricity, was to permit such wires to remain uninsulated within eight or ten feet of the ground, where children were playing, we say that the jury was eminently correct in refusing to be guided by such custom when deciding what constituted the proper degree of care in the premises. Whoever uses a highly destructive agency, such as electricity, is held to a correspondingly high degree of care. Care in this sense may mean more than mere mechanical skill; it includes circumspection and foresight with regard to reasonably probable contingencies. City of Durant v. Allen, 67 Okla. 1, 168 P. 205.

It is not shown with certainty just what voltage entered the body of the boy. There was a 110-volt line in the alley, and also a line of much higher voltage. Ordinarily the voltage which would have gone into the house for lighting purposes would have been 110. However, the exact amount of voltage is not important, if the amount received by the injured person was sufficient to cause serious harm. In Duncan Electric & Ice Co. v. Chrisman, supra, we held that:

"It is negligence for an electric light company to maintain in the streets of a city a 'primary wire' carrying a high voltage of electricity without having such primary wire insulated."

In Ladow v. O. G. & E. Co., 28 Okla. 15, 119 P. 250, it was held that where an electric light company is using a current so powerful that contact with its appliances and wires is dangerous to life and limb, it owes a duty to one, not a wanton trespasser, who in the pursuit of a lawful occupation is where he has a legal right to be and is liable to come in contact with the wires, to so insulate them as to render them harmless.

Defendant also contends that the evidence shows plaintiff guilty of contributory negli-

gence, barring his recovery. The argument in support of this contention is somewhat indefinite, and it is difficult to ascertain exactly upon what basis the defendant places this contention. The trial court properly instructed the jury on the theory of contributory negligence, as applied to children in actions of this kind. In finding against the defendant on this issue the jury evidently concluded that the conduct of plaintiff was such as would normally be expected from a child of his age, under the circumstances. The plaintiff was of course in a place where he had a right to be, and was engaged in a lawful pastime,—one, we may say, which was normal for his age. The contact with the live wire appears to have been wholly accidental, in the sense that it was not sought by the plaintiff. The plaintiff and his companion testified that they did not know the wire was charged with electricity, and in view of the fact that no electric current was being furnished the house, this was a reasonable belief in a child of that age. The evidence reasonably sustains the finding of the jury that the plaintiff was not guilty of contributory negligence, as that term is defined in its application to children.

Finally, the defendant complains of the court's refusal to give two requested instructions to the jury. It is unnecessary to discuss this assignment at length. One of said requested instructions, when considered in reference to the facts of the case, would have stated the law more favorably to defendant than is justified by the authorities. The principle of law sought to be impressed upon the jury by this requested instruction was, to the extent authorized, properly announced to the jury in the instructions which were given by the court, as was also the remaining requested instruction, in substance though in other words.

We find no error in the proceedings. The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.