## OKLAHOMA NATURAL GAS CO. et al. v. COURTNEY.

No. 26787. April 19, 1938.

Rehearing Denied May 17, 1938.

Allen, Underwood, Canterbury &. Pinson and Clyde H. Hale, for plaintiffs in error.

A. Francis Porta and J. A. Rinehart, for defendant in error.

WELCH, J. Defendant in error, Alonzo Price Courtney, as plaintiff below, filed his action against the plaintiffs in error, Oklahoma Natural Gas Company and Joe Gist, defendants below. for damages, and for convenience the parties will be designated as they appeared in the court below.

The plaintiff's petition alleged that. Oklahoma Natural Gas Company was in the business of producing, transporting, and selling gas in the city of El Reno, Okla., and that Joe Gist was the servant, agent, and employee of said company, and acting within the scope of his employment, and Roy B. Smith was a licensed plumber of the city of El Reno. A portion of plaintiff's petition is as follows:

"Plaintiff alleges that on or about the 18th day of January, 1933, the defendant Joe Gist, and the defendant Roy B. Smith, his servants, agents and employees, at the request of this plaintiff, proceeded to the home of the plaintiff for the purpose of releasing natural gas from the gas mains of the Oklahoma Natural Gas Corporation into the pipes and fixtures in and under plaintiff's home; that prior to the time when said defendants released the natural gas into said pipes and fixtures, the plaintiff had advised the defendants that he had not theretofore resided in the premises where he desired the gas connection to be made by the said defendants, that he knew nothing of the condition of the gas fixtures within and under said premises, and that it was his desire and he thereupon requested that the servants, agents and employees of the Oklahoma Natural Gas Corporation and the defendant Roy B. Smith proceed to said premises. inspect the gas meter of said defendant corporation and the mains, pipes and fixtures leading to and upon said premises and make suitable arrangements for the safe delivery of natural gas to said premises; that the servants, agents and employees of the Oklahoma Natural Gas Corporation acting on its behalf and for its benefit within the scope of their authority. and the defendant Roy B. Smith agreed to perform the services requested by this plaintiff, as above set out, and to safely deliver natural gas into the premises of the plaintiff."

The plaintiff's petition was supplemented by an amendment to petition, which amendment alleged that the person to whom he made the request that "the agents, servants and employees of the said Oklahoma Natural Gas Corporation proceed to said premises, inspect the gas fixtures thereto and and thereon" was a woman in the office of the defendant company, and that such request was made orally as "a part of the transaction" by and through which the gas company agreed with the plaintiff to furnish natural gas to his home.

The petition proceeds to allege, "thereupon it became the duty of said defendants. Joe Gist and Roy B. Smith, and each of them, to make proper and suitable arrangements for the safe delivery of natural gas into the home of the plaintiff"; but that Joe Gist and Roy B. Smith, and each of them, "carelessly, recklessly and negligently and without regard to the rights and safety of this plaintiff or to the duty owing this plaintiff. opened the valve from the gas main of the defendant Oklahoma Natural Gas Corporation, and opened the gas meter belonging to said defendant"; and that this

was done "without having made any test or inspection, as it was their duty to do, of the condition of the gas meter or of any gas·pipes, fittings, fixtures, connections and jets from the main to, in, about and under the plaintiff's home or premises." It is charged that the meter, pipes, main fittings, connections, and jets were in a leaky and dilapidated condition; that the meter was the property of the defendant corporation "under the control and supervision of the defendant Joe Gist, assisted by the defendant Roy B. Smith." The unsafe condition is said to have been known to the defendants Joe Gist and Roy B. Smith. If not known, it could have been known by the exercise of care commensurate with the high duty owed in connection with the dangerous substance involved.

It is further alleged that by reason of the escape of gas, occasioned by the condition of the various conduits, an explosion occurred which caused the plaintiff various injuries, "all of which was the direct and proximate result of the gross and wanton concurrent negligence of the defendant Roy B. Smith and the defendant Joe Gist, who was then acting within the scope and authority of his employment by the Oklahoma Natural Gas Company," and that because of said injury plaintiff has been damaged in the sum of $2,999.

After certain motions and a demurrer had been acted upon by the court, the defendants Oklahoma Natural Gas Company and Joe Gist filed their answers, which, after a general denial, denied under oath that any person alleged to have agreed to perform the service of inspection was acting as the agent of the defendant or within the scope of his authority.

The cause was submitted to a jury and a verdict returned for the plaintiff and against the defendants Joe Gist and Oklahoma Natural Gas Company for the sum of $2,999, upon which judgment was entered after motion for judgment notwithstanding the verdict and motion for new trial were overruled. The defendants Oklahoma Natural Gas Company and Joe Gist bring this appeal.

To the jury were submitted special interrogatories, which, with the answers, are here quoted:

"Interrogatory No. I. Do you find from the evidence that Courtney requested the Oklahoma Natural Gas Corporation to inspect and determine the safety of his pipes? A. Yes."

"Interrogatory No. II. If you answered interrogatory No. 1 in the affirmative, then, do you further find Miss Putman agreed that Joe Gist would inspect and determine the safety of any houselines belonging to the property into which Courtney was moving? A. Yes."

"Interrogatory No. III. Do you find from the evidence that Miss Putman had implied authority to make any contract on behalf of the Oklahoma Natural Gas Corporation to make any agreement relative to inspection and determination of safety of houselines by an employee of Oklahoma Natural Gas Corporation? A. Yes."

"Interrogatory No. IV. When the.employee Gist went to Courtney's house, state whether or not he told Courtney in substance that Courtney should have his plumber turn on the gas and check for leak? A. No."

"Interrogatory No. V. Do you find that it was the duty of the persons setting the stoves to check back through the meter, after the stoves were set, to ascertain whether there was any leaks, open jets, or uncapped risers? A. No."

The defendants assign as error the action of the trial court in overruling their motion for a new trial; in overruling their motion to strike and to make more definite and certain; in overruling their demurrer to the petition and amendment thereto; in overruling their motion for judgment on the pleadings and opening statement of counsel and in giving certain instructions and in refusing to give certain requested instructions. These assignments of error are discussed under eleven propositions, which will be stated below.

Defendants' propositions 1 and 2 are as follows:

"One asserting agency and authority has the burden of proving the same in the presence of a verified denial of such agency. The person alleged to have made a contract on behalf of the defendant Oklahoma Natural Gas Company had no authority, as the evidence discloses, to bind the company by such an agreement.

"A contract must involve a meeting of the minds of the parties in a definite agreement. There was no definite agreement in this instance such as is pleaded and such as could render the defendants liable."

The plaintiff testified that he went to the office of the Oklahoma Natural Gas Company and there made a deposit for gas service to his house and there told Miss Putman, a company employee, that he would like for them to send somebody down to examine the pipes under the house and to examine the meter and to test it, and that Miss Putman replied, "We do that; we have

a man that we send down and see that everything is all right." And that Miss Putman called to Joe Gist, who was sitting in the room, and he said: "Yes, I will go down there and fix it."

In Reed v. Anderson, 127 Okla. 64, 259 P. 855, in the first paragraph, of the syllabus, it is said:

"Agency is never presumed, but is a question of fact to be proven, and the acts and declarations of the agent are not sufficient of themselves to establish the facts of agency, but must be determined from all the evidence, facts, and circumstances."

The record discloses that Miss Putman, a "contract clerk," was the agent of the company with unquestioned authority to bind the company to deliver gas and to order the physical work performed that was necessary to delivering gas. It is obvious that this employee had general power to do what was usual and necessary to carry on the business intrusted to her; and in furtherance of her employer's interest, to make all such contracts as were reasonable and appropriate to that end.

Concerning the usual methods employed by the defendant company in delivering gas to customers and concerning the general instructions said company gave to its employees, the manager of the company's operations in the city of El Reno testified as follows:

"A. It instructed us how to turn the gas into the customer's place, what to do. Q. You testified if you found that the equipment on the property was in bad shape, that you were instructed to advise the customer to call a licensed plumber? A. Yes, sir. Q. How would you find out if the property was in bad shape? A. Well, we generally, when the person comes in to make application for gas, we go out and if the meter continues to run, we turn it off and tell them to get a licensed plumber to fix the lines. Q. You would go down and turn on the meter? A. Yes, sir. * * * Q. You just use the meter system to check the line? A. Yes, sir. * * * Q. You gave instructions to investigate and check the meters, didn't you? A. Yes, sir."

In Reed v. Anderson, supra, in the second paragraph of the syllabus, this court said:

"On the question of agency, where the evidence is conflicting and there is any competent evidence tending to establish agency and the extent of the authority of the agent, the issue as to such agency and the authority of the agent are questions to be determined by the jury."

We can reach no other conclusion than that the trial court was right in determining that this evidence, of agency, and the extent of the authority of the agent, and of the agreement, was sufficient to submit these questions to the jury.

In proposition 3 defendants state:

"There is no duty on the part of a public utility selling gas to inspect, repair, or alter the conduits provided by the customer on his own premises."

This contention will not be considered, in view of the findings of the jury that there was a contractual duty to inspect plaintiff's conduits.

Defendants' propositions 4, 5, 6, and 7, concerning negligence and proximate cause, will be discussed together; these propositions as stated are:

"Where a corporation is charged with a specific act of negligence alleged to have been committed by one of its servants, the corporation cannot be held guilty of negligence unless the evidence discloses that the agent was negligent. Joe Gist in this instance is the only channel through which the plaintiff may reach the defendant by any charge of negligence. The proof fails in this respect; therefore, the corporation may not be held.

"One is not to be charged with negligence because of an occurrence which could not have been reasonably anticipated from the actions complained of.

"Where there is an intervening efficient cause wholly independent of the causes to which an injury is ascribed, that independent cause being nearer in point of time must be treated as the proximate cause rather than the prior acts of alleged negligence.

"There is no causal connection between the alleged acts of Joe Gist and the injuries complained of, and it is patent that any knowledge which Joe Gist might have acquired by the alleged contractual inspection would have been of no avail."

Joe Gist, the employee of the gas company, turned on the gas from the mains to the meter on plaintiff's premises without making a test of plaintiff's lines, and at that time there was an uncapped line under plaintiff's house. Plaintiff testified that after turning on the gas Joe Gist came to his door and said, "The gas is on and everything is all right." Thereafter a plumber turned the valves at the meter and the gas flowed into plaintiff's lines and escaped from the uncapped line under the house. The explosion followed and plaintiff was injured.

As heretofore mentioned, plaintiff testified that Joe Gist was present when he suggested the probability of defects in the lines

and the agreement was made concerning inspection and testing of the meter and lines. The record discloses that Joe Gist had been an employee of the gas company for many years, that it was the custom of the company to make a meter test of the lines of applicants for gas service, and that the company gave written instructions to its employees to make such tests and to inform the customer of the condition of his lines. It is undisputed that if the meter had been opened by Joe Gist, the fact that there was an opening in plaintiff's lines would have been discovered. Unquestionably natural gas is a dangerous and destructive agency, and the discovery would have been of much value.

The valve at the meter was so constructed that any person might easily open it. It is apparent from all the facts and circumstances that from the time plaintiff made request and deposit for gas service Joe Gist and the gas company anticipated that shortly after the gas was released from the mains to the meter, plaintiff or some person would open the meter valve and turn gas into plaintiff's lines and fixtures.

In the case of Chicago, R. I. & P. Ry. Co. v. Brazzell, 40 Okla. 460, 138 P. 794, in the fifth paragraph of the syllabus the court said:

"A party guilty of negligence or omission of duty is responsible for all the consequences which a prudent and experienced party, fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind."

The rule with reference to the intervening act of a third person is mentioned in a California case, Hale v. Pacific Tel. & Tel. Co. (Cal. App.) 183 P. 280, where it is said:

"Where the original negligence of a defendant is followed by an independent act of a third person, which results in direct injury to plaintiff, defendant's negligence may constitute the proximate cause of the injury, if defendant should have known the intervening act was likely to happen; otherwise, if the act was one which defendant should not have reasonably anticipated."

See, also, 45 C. J. 934:

"If the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury."

In the case of Engle v. Director General of Railroads, 78 Ind. A. 547, 133 N. E. 138, it is said:

"Where there is an intervening, responsible agency, which directly produces the injury, as in this case, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition, or remote cause, is to be determined by ascertaining whether the agency which intervened was of such a character, and the circumstances under which it occurred were such, that it might have been reasonably expected that such agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused. If, under the circumstances, the intervention of such an agency in the manner stated might reasonably have been expected in the usual course of events, and according to common experience, then the chain of causation, extending from the original wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as the proximate cause."

See, also, Kentucky Ind. Oil Co. v. Schmitzler, 208 Ky. 507, 271 S. W. 570:

"Does the fact that a second human actor, not acting in concert with a first human actor intervenes with a tortious act which begins later in time to a tortious act of the first actor and which second tortious act is the only force in active motion at the time of the damage, exonerate the first actor from liability? Although the second human actor may be liable, it does not necessarily follow that the first is exonerated. By the decided weight of authority the first will be liable if he foresaw or ought to have foreseen the commission of the second's tort. Although the earlier view was that the prior tort-feasor was never liable where a later tort-feasor intervened— see Vicars v. Wilcocke, 8 East 1 (1806)—yet it has gradually come to be admitted that the earlier tort-feasor is liable in cases where the commission of the subsequent unlawful or tortious act and the happening of the damages ought to have been foreseen by him as not unlikely to follow."

In the case of St. Louis & S. F. Ry. Co. v. Darnell, Adm'r, 42 Okla. 394, 141 P. 785. this court said:

"In a suit for personal injuries the question of whether or not defendant's negligence is the proximate cause of the injury sustained should be left to the jury, where the evidence is conflicting, or where men of ordinary intelligence might differ as to the effect of the evidence on the point."

And:

"The question of proximate cause may be determined from circumstantial evidence."

Under the above-mentioned evidence and the foregoing rules, the questions, not only as to negligence, but also as to proximate cause, were for the determination of the jury.

In proposition 8 the defendants urge that "Joe Gist's actions were at most a violation of his duty to his master; nonfeasance for which he is not liable to plaintiff."

Joe Gist was employed by the gas company to deliver gas to applicants for gas service. As one engaged in the occupation of distributing gas, he was required to exercise a degree of care commensurate with the dangerous character of the commodity which he was handling.

In the case of City of Marlow v. Parker, 177 Okla. 537, 60 P.2d 1044, it is said:

"Whoever uses a highly destructive agency, such as electricity, is held to a correspondingly high degree of care. Care, in this sense, may mean more than mere mechanical skill; it includes circumspection and foresight with regard to reasonably probable contingencies."

See, also, 45 C. J. 847:

"One who deals with an article which is imminently dangerous owes a public duty to all to whom it may come and who may be endangered thereby to exercise caution adequate to the peril involved, as, for example, in giving notice of its dangerous character, and there need be no privity between him and the person injured."

In Southern Ry. Co. v. Miller (Ga. App.) 57 S. E. 1090, and Southern Ry. Co. v. Grizzle (Ga.) 53 S. E. 244, it is said:

" 'Nonfeasance' is the total omission or failure of the agent to enter upon the performance of a distinct duty or undertaking which he has agreed with his principal to do. 'Misfeasance' means the improper doing of an act which the agent might lawfully do."

If Joe Gist had never done anything toward carrying out his contract with the company, the delivery of gas to a customer; no one, except the company, could have maintained an action against him for the nonfeasance. But Joe Gist entered upon the performance of a distinct undertaking, the delivery of gas to plaintiff's premises, and it was his duty to use reasonable care in the manner of performing the undertaking so as not to cause any injury to the plaintiff which might be the natural consequences of his acts. He could not abandon the undertaking midway and remove the safeguards and leave things in a dangerous condition and escape liability to the plaintiff who suffered injury because of his conduct. This was not nonfeasance, or doing nothing; but it was misfeasance, doing improperly.

The facts in this case are inapplicable and come within one of the exceptions to the rule mentioned in defendants' proposition 9.

In proposition 10 it is urged that the trial court erred in refusing to instruct the jury peremptorily for the defendants, and in refusing to submit defendants' requested instructions Nos. 3 and 5:

No. 3. "Even if you find the Oklahoma Natural Gas Company was negligent, if there was an act of negligence of some person over whom they had no control, and that act was the direct, immediate cause, proximate cause of this explosion, then the plaintiff may not recover, and your verdict must be for the defendants, Oklahoma Natural Gas Company and Joe Gist."

No. 5. "Before you can find the defendant, Joe Gist, guilty of negligence in this case, you must find that there was a contract between Courtney and Miss Putman that he should inspect the gas lines, and that Joe Gist knew or was advised of said agreement, and that he failed to suggest that a plumber should check the lines for openings or leaks."

We are of the opinion that the court fairly covered these matters in the instructions given. In instruction 4 the court plainly told the jury that they could not return a verdict for the plaintiff unless they found from a preponderance of the evidence that the negligence of the defendants was the proximate cause of the explosion, and in instruction 6 proximate cause was defined as being the direct and immediate cause without the intervention of some other cause and without which the explosion would not have occurred.

In instruction No. 11 the court submitted the proposition of Joe Gist's negligence in its entirety, and the jury was told therein that they could not return a verdict against Joe Gist unless they found that he had knowledge of the agreement. In their answers to the interrogatories the jury found there was a contract and that Gist failed to suggest that a plumber check the line.

In proposition 11 it is urged that:

"The instructions given do not properly clarify and present the issues of law and fact."

Most of defendants' objections to the law as given in the instructions were presented in the preceding propositions. Our opinion concerning the instructions given and re-

fused in this case is expressed in the language used in paragraphs 3 and 4 of the syllabus in the case of St. Louis & S. F. R. Co. v. Frazer, 75 Okla. 265, 183 P. 478:

"Instructions submitted to the jury by the court examined, and found to fairly state the law as applicable to the facts; hence, the court committed no prejudicial error in its instructions to the jury.

"The court having fairly covered the issues involved in its general instructions to the jury, held, did not err in refusing to submit to the jury special requested instructions of the defendant."

On the entire record, we are convinced that the defendants had a fair trial, and that the judgment is reasonably sustained by the evidence.

The judgment is affirmed.

BAYLESS, V. C. J., and RILEY, GIBSON, and DAVISON, JJ., concur.