451 P.2d 653

ESSEX WIRE CORPORATION OF CALI-
FORNIA, a California corporation, and
Essex Wire Corporation, an Indiana cor-
poration, Appellants,

v.

SALT RIVER PROJECT AGRICULTURAL
IMPROVEMENT AND POWER DIS-
TRICT, a municipal corporation and a po-
litical subdivision of the State of Arizona,
and St. Paul Fire and Marine Insurance
Company, a corporation, Appellees.

No. 1 CA–CIV 473.

Court of Appeals of Arizona.

March 13, 1969.

O'Connor, Cavanagh, Anderson, West-
over, Killingsworth & Beshears, by John H.
Lyons, Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, by
Thomas J. Trimble, Phoenix, for appellees.

HATHAWAY, Judge.

The appellee, Salt River Project Agricultural Improvement and Power District (herein referred to as plaintiff), brought suit below against appellants Essex Wire Corporation of California and Essex Wire Corporation, a Michigan* corporation (herein collectively referred to as defendant). Plaintiff sought damages for inspection costs and for replacement of defective electrical wire. It also sought indemnity for a judgment obtained against it in a wrongful death action. There were alternative claims, one based on breach of manufacturer's warranty and the other on negligence; both concerning allegedly defective electrical wire purchased by plaintiff from defendant.

The wire in question, described as "weatherproof wire," was purchased in 1954 and used by plaintiff, along with wire purchased from other suppliers, for the construction of "service drops." Service drops are lines of electrical wire which extend from utility poles to meters on the premises of individual customers. There was evidence that, during the year 1956, some of plaintiff's employees reported receiving electrical shocks while handling some service wire. Because of these reports, plaintiff began tests on the insulating qualities of wire purchased from its suppliers thereafter. None of these tests revealed that weatherproof wire purchased from any supplier thereafter, including defendant, was defective. No tests were conducted on service drop wire which had already been installed.

In 1960, some four years after the tests were instituted, it was reported to plaintiff that Leonard Bogan, the teenage son of one of its customers, had been electrocuted while picking oranges from a tree in the backyard of the family residence. The boy had come into contact with service drop lines while standing on a metal ladder on a wet lawn. The service drop ran to the side and perhaps above the tree when installed, but, due to subsequent growth of the tree, actually ran through the side of the tree at the time of Bogan's death.

Bogan's parents brought suit against plaintiff for wrongful death. Plaintiff cut open a section of the wire used in the Bogan service drop, revealing a yellow thread or "marker" which ran along the aluminum wire under the neoprene covering. The marker was then traced to defendant and defendant was asked to defend in the wrongful death action. Defendant denied liability and plaintiff subsequently settled out of court with the Bogans for $35,000. Appellee St. Paul Fire and Marine Insurance Company was plaintiff's insurance carrier and is in the case by right of subrogation after having paid the bulk of this settlement.

After Bogan's death, plaintiff also proceeded to check for defective wire in other service drops which had been installed prior to 1956. Of 14,888 tested, 2,445 proved to be dangerous and were replaced. The defect was later determined to be caused by an excess of carbon black in the neoprene covering. Virtually all of this wire was identified (by the yellow marker) as wire manufactured by defendant. The replacement costs were in excess of $49,000.

The negligence claim was dropped by plaintiff prior to submission of the claims to the jury, which found for plaintiff on the issue of breach of warranty but found for defendant on the issue of indemnity for the wrongful death claim. Plaintiff then moved for judgment notwithstanding the verdict and, in the alternative, for a new trial as to the wrongful death issue only. Both of these motions were granted; the new trial order was conditioned upon reversal on appeal of the judgment notwithstanding the verdict. Rule 50(c), Rules of Civil Procedure, 16 A.R.S.

On appeal, defendant asks that we reverse the judgment notwithstanding the verdict, set aside the order for new trial, and reinstate the verdict. In the alternative, defendant raises questions for review

* The Essex Wire Corporation was erroneously sued as an Indiana corporation.

which, if well taken, would require a new trial of the entire matter.

Also, plaintiff, prior to oral argument, moved for dismissal of the appeal based upon alleged defects in defendant's Notice of Appeal. That motion was denied with leave to reurge it in the briefs. The motion has been so raised and we consider it first.

The Notice of Appeal indicates intent to appeal from:

"* * * *the verdict* of the jury; the judgment entered thereon; the *denial of the defendants' Motion for New Trial*; the *denial of the defendants' Motion for Judgment Notwithstanding the Verdict* as to that portion of the verdict giving plaintiff a recovery for its claimed costs of replacing wire supplied by defendant; *the granting of plaintiff's Motion for Judgment Notwithstanding the Verdict* on that portion of the verdict denying plaintiff recovery for the amounts paid to settle claim for the death of Leonard Lee Bogan; the court's *granting of plaintiff's Motion for New Trial in the Alternative* in the event the Superior Court's granting of the Motion for Judgment Notwithstanding the Verdict by plaintiff is overruled by an appellate court." (Emphasis supplied.)

Plaintiff-appellee points out that the right to appeal is a statutory right and that an appellate court has jurisdiction only if a notice of appeal is filed in accordance with the appropriate statute. *See* Donovan v. Esso Shipping Co., 259 F.2d 65 (3d Cir. 1958), cert. denied, 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572. Plaintiff contends that the Notice of Appeal filed by defendant in this case is defective because of (1) reference to nonappealable orders rather than judgments and (2) failure to cite the dates of judgments appealed from

as provided in Rule 73(f), Rules of Civil Procedure, 16 A.R.S.

■ We do not agree that the defects in the Notice of Appeal require dismissal in this case. Cases holding that citing of a nonappealable order renders the notice sufficiently defective to deprive the appellate court of jurisdiction, Arizona Corporation Commission v. Pacific Motor Trucking Company, 83 Ariz. 135, 317 P.2d 562 (1957); Associates Finance Corporation v. Scott, 3 Ariz.App. 1, 411 P.2d 174 (1966), have recently been overruled by Hanen v. Willis, 102 Ariz. 6, 423 P.2d 95 (1967). *Hanen* provides:

"* * * *when adequate notice to appeal has been given to the other party, no mere technical error should prevent the appellate court from reaching the merits of the appeal.* Clearly the error in the present case as to the date was merely a technical one, and no one was misled." (Emphasis supplied.) 432 P.2d 98.

The case holds that citing the date of an original minute entry order, rather than the date of the final judgment, does not provide ground for dismissal where no prejudice has been shown. Rule 73(e) [1] requires only that the Notice of Appeal "shall designate" the judgment. *Hanen* makes it clear that citation of dates are not mandatory unless prejudice results. Plaintiff has not alleged prejudice. The motion to dismiss is denied.

We shall now consider defendant's allegations of error in support of its contention that a new trial must be granted on both issues.

■ Defendant first contends that it was error to instruct the jury on our statute on implied warranties of a manufacturer, A.R.S. § 44-215,[2] without including certain

1. "73(e) Notice of appeal. The notice of appeal shall specify the parties taking the appeal and shall designate the judgment, order or part thereof appealed from."

2. A.R.S. § 44-215 provides:
 "Subject to the provisions of this chapter and of any statute in that be-

half, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the

defenses contained in subsections 3 and 4 of the statute. It is difficult to follow defendant's contention on this point since its argument in the brief seems to be devoted to another question—whether there was sufficient evidence at trial to warrant an instruction on implied warranty. We agree with the apparent conclusion of the trial court that there is no evidence which would support either a finding that, short of elaborate tests, plaintiff could have discovered any defects if it "examined the goods" as stated in subsection 3, or that the wire was sold as "a specified article under its patent or other trade name" as stated in subsection 4. We therefore find the omitted subsections inapplicable.

■ Assuming that defendant intended to raise the question argued rather than the question stated, we also find that there was sufficient evidence of implied warranties, and of breach of such warranties, to warrant an instruction on the matter. One of defendant's employees who testified admitted that he was aware that plaintiff was probably using the wire for service drops. The 1953 National Electrical Code requires insulation of service conductors.[3] There was also evidence that wire of the type purchased (weatherproof, type WP) normally has insulating qualities far above those of the wire in question. The instruction was proper as given.

Defendant next contends that no instruction at all should have been given on A.R.S. § 44-215 because of the provisions of A.R.S. § 44-249.[4] The latter section provides that, when a buyer "knows, or ought to know" of a breach of warranty on the part of the seller, the buyer must give notice to the seller "within a reasonable time" that he is holding the seller responsible for the breach. Failure to so act constitutes a waiver of the implied warranties. *See*, Dowdle v. Young, 1 Ariz. App. 255, 401 P.2d 740 (1965).

Defendant maintains that the evidence shows that plaintiff had "actual notice" of defendant's breach of warranty when the tests were instituted on wire purchased

goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"2. Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

"3. If the buyer had examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed.

"4. In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.

"5. An implied warranty or condition as to the quality or fitness for a particular purpose may be annexed by the usage of trade.

"6. An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith."

This section, a part of the Uniform Sales Act, has since been repealed with the enactment of the Uniform Commercial Code. Laws 1967, Ch. 3, § 6, effective January 1, 1968.

3. "2303. Insulation of Service Conductors. Service conductors shall have an insulating covering which will normally withstand exposure to atmospheric and other conditions of use and which shall prevent any detrimental leakage of current to adjacent conductors, objects, or the ground."

4. A.R.S. § 44-249 provides:
 "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor." (This section has also been repealed with the enactment of the Uniform Commercial Code. *See* Footnote 2, supra.)

during and after 1956. As we have stated, those tests were instituted because of reports of plaintiff's employees that electrical shocks were being received from weather-proof wire. The only testimony on this point, from plaintiff's employee Turner, is as follows:

"Q What was the purpose of starting these tests with Mr. Evans [another employee of plaintiff]?

A The purpose was to determine a standard whereby we could determine whether we had good wire or whether it was poor wire.

Q And why did the Project [plaintiff] become suspicious of the nature of the wire?

A We had received some complaints from our linemen, trouble shooters, they were receiving electric shocks from weatherproof wire.

Q You mean some sensation in handling the wire?

A Right.

Q Were these major or minor?

A Minor."

■■ We agree with plaintiff that this testimony does not indicate that plaintiff had "actual notice" of a breach of warranty. While the institution of tests indicates that plaintiff had reason to believe that some wire it had used was of questionable quality, it was for the jury to decide whether plaintiff had sufficient information to constitute "constructive," or, more properly, "implied actual" notice of the defect. Davidson v. Wee, 93 Ariz. 191, 379 P.2d 744 (1963). The jury could reasonably conclude—as it must have done—that the reports of "minor" electric shocks were not sufficient to put a man "of ordinary prudence and intelligence on inquiry." Maricopa Utilities Co. v. Cline, 60 Ariz. 209, 134 P.2d 156 (1943). That some wire used at some unknown location (or perhaps even replaced) gave indication that some manufacturer's wire was substandard to some degree does not indicate to us, as a matter of law, that plaintiff "ought to

have known" that this defendant's wire was defective. *See* Dowdle v. Young, supra, wherein we held that, under similar facts, the question is for the jury. *Cf.* also, Reconstruction Finance Corporation v. Cody Finance Company, 214 F.2d 695 (10th Cir. 1954) and S. & E. Motor Hire Corporation v. New York Indemnity Co., 255 N.Y. 69, 174 N.E. 65, 81 A.L.R. 1318 (1930) with Robie v. Myers Equipment Company, 114 F.Supp. 177 (D.Minn.1953) and Beresford v. Horn, 127 Cal.App.2d 89, 273 P.2d 302 (1954). See also, Elkus Company v. Voeckel, 27 Ariz. 332, 233 P. 57 (1925). As was said in Herrman v. Daffin, 302 S.W.2d 313, 316 (Mo.App. 1957):

"Knowledge may be proved by circumstantial evidence as well as by direct evidence. But the circumstances must be such that the necessary fact may be inferred therefrom and must reasonably follow, so that the conclusion so reached is not the result of guesswork, conjecture or speculation, and such evidence must 'have a tendency' to exclude every other reasonable conclusion."

302 S.W.2d 316.

We conclude that in any event the evidence sufficiently presented a jury question on whether plaintiff had notice of a breach of warranty and that the instructions on A.R.S. §§ 44-215 and 44-249 were properly given.

■ Defendant next contends that the trial court erroneously instructed the jury on the 1953 National Electrical Code requirements for service conductors:

"2303. *Insulation of Service Conductors.* Service conductors *shall have an insulating covering* which will normally withstand exposure to atmospheric and other conditions of use and which shall prevent any detrimental leakage of current to adjacent conductors, objects or the ground." (Emphasis supplied.)

This section was introduced at trial in connection with discussion of insulation requirements for weatherproof wire used in service drops, which are a type of service

conductor. Defendant contends that since this section deals with a broader term it was irrelevant because § 2303, subsection c specifically states the requirements for "service drops." The latter reads as follows:

"Except as provided in paragraph a, service drop conductors in multiple-conductor cables shall be rubber-covered or thermoplastic-covered. All open individual conductors shall be rubber-covered, thermoplastic-covered, or weather-proof (type WP)."

The requirements for "service conductors," § 2303, supra, were properly admitted into evidence for two reasons: First, it is clear that, under the National Electrical Code, a "service drop" is classed as a type of "service conductor." The definition of a service conductor, Art. 100, is:

"Service conductors. That portion of the supply conductor which extends from the street main or duct or from transformers to the service equipment of the premises supplied. *For overhead conductors this includes the conductor between the last pole or other aerial support and the service equipment."* (Emphasis supplied.)

Secondly, we conclude that subsection c is not a complete description of a service drop. To fully appreciate the requirements for service drops, reference to § 2303 is essential. Otherwise the jury could have erroneously concluded that service drops need not be insulated. We therefore hold that the above section on "service conductors" was relevant and properly admitted.

■ Defendant next contends that the trial court erred in excluding proffered testimony, by its expert witness, pertaining to safety regulations of another Arizona utility company. Defendant's counsel attempted to establish that the custom and usage of trade in the area, at the time of the sale of the wire in question, was to handle weatherproof wire as if it had no insulating characteristics at all ("hot wire"). The purpose was to negate reliance on implied warranties (under A.R.S. § 44–215,

subd. 5) by showing custom and usage of the trade. The witness had testified:

"A I was with the Arizona Power Company at that time.

Q How did you treat weatherproof wire at that time?

A We treated it as bare conductor as far as handling it hot."

Objection to further questions, as to what instructions were actually given on weatherproof wire to Arizona Power Company employees during safety meetings, was made on the ground of irrelevancy. The trial court, however, after a conference at the bench, apparently sustained the objection on the ground that it would be merely cumulative testimony:

"THE COURT: He stated they handle it as hot wire, so I think the objection should be sustained."

We think the point was adequately made and that it was not reversible error to exclude cumulative testimony.

The foregoing reveals no error which would require a new trial. We next look to defendant's contention that the verdict should be reinstated, awarding plaintiff damages for breach of warranty but no indemnity on the wrongful death claim.

Defendant contends that it was error to grant the Motion for Judgment Notwithstanding the Verdict because plaintiff did not make an earlier motion for directed verdict as required by A.R.S., Rules of Civil Procedure, Rule 50(b). La Bonne v. First National Bank of Arizona, 75 Ariz. 184, 254 P.2d 435 (1953). Plaintiff answers that this objection was waived by failure to bring it to the attention of the trial court. Our conclusions concerning the trial court's reasons for granting these motions make it unnecessary for us to decide whether such an objection may be waived.

■ The following grounds for the judgment notwithstanding the verdict and for the alternative order for new trial are stated in the judgment:

" * * * the verdict for the Defendants on the damages for the wrongful death claim paid by Plaintiffs for the death of

Leonard Lee Bogan is not justified by the evidence, is against the weight of the evidence and is contrary to law *inasmuch as this portion of the Plaintiffs' claim was based on the same breach of warranty upon which the jury found for the Power District in connection with the inspection and replacement of the defective service drops.* In view of the fact that the cause of the wrongful death of Leonard Lee Bogan, the amount paid in settlement of the claim and the reasonableness of that amount were all admitted and *in view of the jury finding there was a breach of warranty by the Defendants, the Plaintiffs are entitled to judgment against the Defendants* and each of them *for the wrongful death claim* paid by Plaintiffs for the death of Leonard Lee Bogan in the principal sum of Thirty-Five Thousand Dollars ($35,000.00). (Emphasis supplied.)

\* \* \* \* \* \*

"In the alternative and in the event the Judgment Notwithstanding the Verdict herein granted be set aside upon any appeal, or otherwise, it is ordered that Plaintiffs are granted a new trial on the wrongful death claim paid by Plaintiffs for the death of Leonard Lee Bogan for the reasons that the verdict was not justified by the evidence, is against the weight of the evidence and is contrary to law."

It is clear from the above that the trial judge granted both motions solely on the ground that the verdicts were, in his opinion, inconsistent. His reasoning is that, since it was admitted that Bogan was electrocuted by wire manufactured by defendant, and the jury found the wire to be defective, it follows, as a matter of law, that defendant is also liable for the wrongful death damages. Viewing the evidence in the light most favorable to sustaining the verdict, we disagree. Defendant's admission that Bogan was electrocuted, and the finding that the wire was defective, is not sufficient to establish the *proximate* cause in light of other facts.

This action was tried to the jury solely on the basis of breach of warranty, traditionally an action in contract. The defendant denied the breach of warranty, contending that plaintiff's negligence was the proximate cause of the death. In Arizona, breach of warranty by a manufacturer is in tort. O. S. Stapley Co. v. Miller, 103 Ariz. 556, 447 P.2d 248 (1968); Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (1967); Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732, 19 A.L.R.3d 1 (1966); Bailey v. Montgomery Ward & Company, 6 Ariz. App. 213, 431 P.2d 108 (1967). Strict tort liability does not eliminate the necessity of proving proximate causation where the injury may have been caused by the act of someone interposed between the manufacturer and the injured party. *Cf.* O. S. Stapley Company v. Miller, supra; Kennecott Copper Corp. v. McDowell, 100 Ariz. 276, 413 P.2d 749 (1966); Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352 (1954); Bailey v. Montgomery Ward & Company, supra; Smith v. Hobart Mfg. Company, 302 F.2d 570 (3d Cir. 1962); Kempf v. Zotos Corp., 261 App.Div. 821, 24 N.Y.S.2d 485 (1941).

The evidence does not compel the conclusion that Bogan's death was proximately caused by the breach of warranty. On the one hand, the evidence shows that if the wire had insulating characteristics, as impliedly warranted according to the jury's finding, Bogan would not have been killed by touching it. On the other hand, there was evidence that the service drop had been improperly installed at the Bogan residence—by running it near a young citrus tree or by failing to provide tree guards around the wire. The jury could have reasonably concluded that had the service drop been installed according to accepted safety requirements, the boy would not have been killed. The 1953 National Electrical Code, Art. 230, § 2322(b), provides:

"Clearance from Ground. Conductors shall have a clearance of not less than 10 feet from the ground or from any plat-

form or projection from which they might be reached."

It was conceded at trial that a tree is a "projection from which [conductors] might be reached." As previously stated, the evidence shows that the service drop lines actually ran through the outermost branches on one side of the tree. Plaintiff's own accident prevention rules, in evidence, also provide:

"Employees shall not place dependence for their safety on the weatherproofing or so-called insulation covering of wires."

It would be untenable to condone plaintiff's position that as to the public it had a right to rely on the insulating qualities warranted while at the same time it was instructing its own employees not to so rely.

 We also believe that, even though the jury may have found the notice of breach of warranty insufficient to preclude plaintiff from recovering for replacement of the defective wire, plaintiff's information that some service wire might have been defective could nevertheless be considered by the jury in determining the proximate cause of Bogan's death. Commensurate with the danger involved, plaintiff owed a higher degree of care to the public than it did to defendant. Probart v. Idaho Power Co., 74 Idaho 119, 258 P.2d 361 (1953); Couch v. Pacific Gas & Electric Co., 80 Cal.App.2d 857, 183 P.2d 91 (1947); City of Marlow v. Parker, 177 Okl. 537, 60 P.2d 1044 (1936); Polk v. City of Los Angeles, 26 Cal.2d 519, 159 P.2d 931 (1945); Lozano v. Pacific Gas & Electric Company, 70 Cal. App.2d 415, 161 P.2d 74 (1945). *See* also, Salt River Valley Water User's Ass'n v. Compton, 39 Ariz. 491, 8 P.2d 249, rehearing denied, 40 Ariz. 282, 11 P.2d 839 (1932). The jury could have justifiably found that plaintiff breached its duty to the public, and Bogan in particular, by failing to test existing service installations even though failure to do so did not vitiate defendant's implied warranties via the provisions of A.R.S. § 44–249.

Our Supreme Court has defined "proximate cause" as follows:

"The proximate cause of an event is that which, in a natural and continuous sequence unbroken by any new, independent cause, produces the event, and without which the event would not have occurred. This connection is broken when a new or subsequent cause intervenes so as to become the sole factor producing the injurious result to the exclusion of the negligence of the first wrongdoer in its operation as an efficient factor therein, but it is not broken by the addition of another factor or cause which merely contributes to the result without superseding the efficient operation of the first cause."

City of Douglas v. Burden, 24 Ariz. 95, 101–102, 206 P. 1085, 1087 (1922).

The jury could have reasonably concluded that plaintiff strung the service drop to the Bogan residence in violation of the Electrical Code and/or that the line was permitted to remain in dangerous and prohibited proximity of the tree from which the Bogan boy was electrocuted in spite of notice that some wire it was using might be defective. Further, they could have reasonably concluded that this dangerous condition created by plaintiff was a proximate cause of the death.

 Our Supreme Court, in Salt River Valley Water User's Ass'n ·· v. Cornum, 49 Ariz. 1, 63 P.2d 639 (1937), stated that acts of nonconcurrent tortfeasors may, under some conditions, both be proximate causes of injury to a third party. The fact that, under the *Cornum* test, defendant might also have been liable if sued by Bogan's survivors does not aid plaintiff here. There can be no contribution nor indemnity between tort-feasors in this state. Blakely Oil, Inc. v. Crowder, 80 Ariz. 72, 292 P.2d 842 (1956); Schade Transfer & Storage Co. v. Alabam Freight Lines, 75 Ariz. 201, 254 P.2d 800 (1953); United States v. State of Arizona, 214 F.2d 389 (9th Cir. 1954). Cf. Ambrose v. Standard Oil Company of California, 214 F.Supp. 872 (D.Or.1963); Siebrand v.

Eyerly Aircraft Company, 196 F.Supp. 936 (D.Or.1961).

We therefore hold that the verdicts were not inconsistent and that plaintiff is not entitled to recover its loss on the Bogan claim even though it is entitled to recover damages for breach of warranty. It follows that it was error to grant judgment notwithstanding the verdict on the Bogan claim and also an abuse of discretion to grant a new trial in the event of reversal of that judgment.

Reversed and remanded with instructions to enter judgment for defendant on the verdict of the jury as to the wrongful death claim.

MOLLOY and KRUCKER, JJ., concur. NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.